**Tess L. Hacker, Appellant, v. Maude Myers, Chairman, Saul A. Epton, and Warren D. Moyer, Members of and Constituting the Illinois State Civil Service Commission, Appellees.**

**Gen. No. 48,239.**

First District, Second Division.

December 5, 1961.

Michael F. Ryan, of Chicago (Richard F. McPartlin, of counsel), for appellant.

William G. Clark, Attorney General of the State of Illinois (William C. Wines, Raymond S. Sarnow and A. Zola Groves, Assistant Attorneys General, of counsel), for appellees.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

The plaintiff, Tess L. Hacker, brought a common law certiorari proceeding against the members of the Illinois State Civil Service Commission to review their decision discharging her from her civil service position as chief switchboard operator of the State of Illinois Building in Chicago. The trial court entered judgment for defendants, sustaining their order removing plaintiff, and dismissed her complaint. Plaintiff appeals.

Plaintiff began her employment as a switchboard operator for the State Department of Finance on May 1, 1941 and was certified and appointed as chief operator on November 1, 1941. She continued to occupy that and successive supervisory positions until April 22, 1958, when she was notified that her services were terminated. Her duties as chief switchboard operator placed her in charge of a seven-position board at the State of Illinois Building at 160 North LaSalle Street, Chicago. The charges filed against her were as follows:

"The character of this employee's work has been deteriorating. Employee has been below par physically which required absence from work and several checkups in the hospital. Employee has appeared to be emotionally disturbed, has been unable to get along with other employees and to a marked degree has lost the ability to direct the activities of the switchboard room, and the

324

employees thereof, thereby creating more than an average turnover and giving the switchboard room the reputation of being an undesirable place to work."

On April 28, 1958 the members of the Civil Service Commission received plaintiff's request for a hearing which was accordingly set for May 22, 1958. A motion to quash the charges or, in the alternative, to furnish a bill of particulars was filed on behalf of plaintiff. The commission members thereupon ordered the Department of Finance to file a bill of particulars, and in compliance with this order a bill was filed specifying numerous complaints subscribed to by switchboard operators under plaintiff's supervision, the manager of the building, and others. At a hearing scheduled for June 26, 1958, plaintiff's attorney moved to quash certain parts of the bill of particulars for the reason that the charges were vague or stale and did not set forth any facts constituting cause for removal. This motion was not ruled upon, and the case proceeded to hearing. After the taking of some testimony, the hearing was continued to July 3, 1958, and then to August 14, 1958, when it was concluded.

On November 19, 1958 the commission members issued their findings and decision approving the recommendation of the hearing officer that the plaintiff be discharged. On January 27, 1959 plaintiff filed her complaint in the Circuit Court for common law certiorari, and on November 16, 1959 the trial judge reversed the decision of the commission members on the ground that it contained insufficient findings of fact, and remanded the cause to the commission members for making findings of fact with reference to the evidence introduced at the hearing on the charges filed against plaintiff. Thereafter, no action being taken by defendants, plaintiff on January 15,

325

1960 made a demand for reinstatement and payment for back salary. Five days later, plaintiff's attorney received a copy of the findings and decision of the commission members ordering plaintiff discharged. Plaintiff then filed a petition to redocket the case, and an order was entered accordingly requiring defendants to file a supplemental record within twenty days. This supplemental record was filed March 1, 1960, the cause was set for an early hearing on motion by the plaintiff, and on May 20, 1960 the court entered the judgment order appealed from.

 It will be noted that this case was instituted as a common law proceeding for certiorari. On July 21, 1959 the Personnel Code Act (Ill Rev Stats 1959, c 127, §§ 63b.101–63b.118) was amended to provide (§ 63b.111a) that all final administrative decisions of the Civil Service Commission thereunder should be subject to judicial review pursuant to the provisions of the Administrative Review Act (Ill Rev Stats 1959, c 110, §§ 264–279). Plaintiff contends that the Personnel Code amendment is not applicable to this proceeding because she instituted her suit on January 27, 1959, before the amendment was adopted.

There is a comprehensive discussion of the doctrine of retroactive and prospective application of various types of statutory modification in Orlicki v. McCarthy, 4 Ill2d 342, 122 NE2d 513 (1954). By statutory provision (Ill Rev Stats 1959, c 131, § 4), legislation is generally to be construed as prospective in character, "save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." "The Illinois courts," said the court in the Orlicki opinion (p 346), "have limited the application of that statute by holding that the only rights within the protection of section 4 are 'vested rights.' [Citing cases.]" And, the court continued (pp 347–348):

"In addition to this broad exemption in section 4 of the act in relation to construction of statutes, commonly referred to as the Saving Statute, courts have also excepted amendments relating to matters of procedure, and have held that where the change in law merely affects the remedy, or the law of procedure, all rights of action will be enforcible under the new procedure without regard to whether they accrued before or after such change of law, and without regard to whether suit has been instituted or not, unless there is a saving clause as to existing legislation. [Citing cases.]"

The law applicable in this State, said the Supreme Court in Ogdon v. Gianakos, 415 Ill 591, 597, 114 NE2d 686 (1953),

"is that there is no vested right in any particular remedy or method of procedure, and that, while generally statutes will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, nevertheless, when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. [Citing cases.] . . . ."

In Duna v. Nat'l Bank, 28 Ill App2d 500, 171 NE2d 802 (1961), plaintiff filed a claim in the amount of $3260 in the Probate Court of Cook County against an estate. Following the denial of her claim, plaintiff made application to the Probate Court for approval of an appeal bond to the Circuit Court of Cook County, for the purpose of appealing the order denying the

claim. The Probate Court denied her motion on the ground that since her claim was in excess of $3000 she was barred from taking her appeal to the Circuit Court because of a recently amended statute relating to controversies of $3000 or more. She thereupon appealed to this court, not from the denial of her claim, but from the denial of her motion for leave to appeal and for approval of an appeal bond to the Circuit Court. She argued that since her claim was filed prior to the effective date of the amendatory legislation, she was not affected by it. We said (pp 505–506):

> "It has frequently been held that where a change of law affects merely the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after the change, unless there is a saving clause as to the existing legislation,"

citing and quoting from the Ogdon case, and also relying on Connett v. City of Jerseyville, 96 F2d 392 (7th Cir 1938), McKinley v. McIntyre, 360 Ill 382, 196 NE 506 (1935), and 50 Am Jur, Statutes, § 15.

In reliance on People v. Fisher, 373 Ill 228, 25 NE2d 785 (1940), plaintiff contends that in a common law certiorari proceeding the court is without authority or jurisdiction to enter a reversing and remanding order. In that case the State Department of Finance, by virtue of the Retailers' Occupation Tax Act, assessed a tax against a furniture company, which subsequently filed in the Circuit Court a praecipe for a writ of certiorari. Following the issuance of the writ, the State Finance Department filed its return with the transcript of proceedings. The corporation attempted to file a written motion to quash the return, but the court refused to entertain it on the

328

ground that the motion was superfluous. On completion of the court hearing, the trial judge entered an order finding that the return showed that the assessment was not duly made by the Finance Department and that other irregularities appeared on the face of the return, and he entered judgment reversing the findings of the Finance Department and remanding the cause to the department for the taking of additional testimony and for other proceedings. The corporation was given leave to file its petition for mandamus to expunge the order, its contention being that the jurisdiction of the trial judge was limited either to an order quashing the writ or an order quashing the record. On appeal the court discussed both statutory and common law writs of certiorari, and quoted (pp 229–230) as follows from its opinion in People v. McGoorty, 270 Ill 610, 110 NE 791 (1915), which in turn was quoting from Sanner v. Union Drainage Dist., 175 Ill 575, 51 NE 857 (1898):

" ' "The purpose of a common law writ of certiorari is to bring the entire record of an inferior tribunal before the court to determine whether such a tribunal has proceeded according to law, and the trial is to be had solely from an inspection of the record. The court cannot consider any matter not appearing of record, and if the want of jurisdiction or illegality appears from the record the proper judgment is that the proceeding be quashed, but if the proceeding be regular the petition must be dismissed and the writ quashed, and these are the only judgments that can be entered in this procedure." (Sanner v. Union Drainage District, 175 Ill 575.) . . . .' "

The Fisher case involved statutory certiorari, and there the court held that where no provision was included in the applicable statute in regard to the au-

thority of the reviewing court to enter orders, it was confined and limited to the authority springing from the common law. The writ of mandamus was ordered to issue, compelling the trial judge to expunge the invalid order and enter an order consistent with the views expressed by the court.

If the judgment order of November 16, 1959 of the trial court in the instant proceeding was absolutely void insofar as it remanded this cause to the commission, then to the extent that that order in effect quashed the Civil Service Commission record it was nevertheless final on the day it was entered, and plaintiff accordingly should have appealed from that order in compliance with the statutory provisions relating to appellate practice (Ill Rev Stats 1959, c 110, § 76). Plaintiff's appeal of record is from the order of May 20, 1960 which sustained the commission members' order removing plaintiff; she cannot prosecute a collateral appeal from the prior order of November 16, 1959 which remanded the cause to the commission for making findings of fact.

█ As her principal ground for reversal, plaintiff contends that the record fails to show cause for removal, and that the conclusion of the commission was unsupported by competent evidence and was against the manifest weight of the evidence. The charges filed against plaintiff stated that the character of her work had been deteriorating; that she was below par physically and was absent from work for hospital checkups and recuperation at home; that she appeared to be emotionally disturbed, had been unable to get along with other employees, and to a marked degree had lost the ability to direct the activities of the switchboard room and the employees thereof, thereby creating more than an average turnover and giving the switchboard room the reputation of being an undesirable place to work.

330

The bill of particulars stated that in November 1949 George W. Mitchell, then director of finance, requested C. H. Sudler, Jr., manager of the State of Illinois Building, to interview its telephone operators to obtain their opinion as to working conditions in the switchboard room, thus indicating that deterioration of plaintiff's work began in November 1949. In an interview the assistant chief operator complained that plaintiff by-passed her as an assistant and relied instead on another operator, a Mrs. McCormac, for relief; that plaintiff was very strict with the operators, aside from Mrs. McCormac; and that the operators were very unhappy under plaintiff's supervision. Other operators interviewed—most of them with experience and some of them with backgrounds of Federal government, brokerage, and hospital switchboards—characterized plaintiff as disturbed, maladjusted, and irritable; they felt that she "played favorites"; stated that she corrected the girls in public, "yelled" and "hollered" at them, and "banged" furniture; described the atmosphere of the switchboard room as resembling that of a house of correction or a military post; and complained that most of the operators were "in a nervous state."

With reference to improper performance of duty, the bill of particulars stated that in 1957 the governor's office received a complaint from a radio announcer that he had been offended by discourteous treatment received from the operators. Plaintiff admitted that she had become a trifle irritated at the time but stated that her irritation was justified; later, however, she wrote a short note of apology to the radio announcer in question. In March of 1956 plaintiff became involved in an argument with one of the operators to whom she refused to grant a maternity leave to which the operator was entitled. Mr. Leth,

the assistant to the director of finance, had to be called to find a way out of the predicament.

George B. Van Vleck, manager of the State of Illinois Building, stated that from December 1, 1954 to December 13, 1957 plaintiff was not a well person and had to take leaves of absence due to illness; that her external nervousness and tension prevented her from being an effective supervisor; and that the unusual personnel turnover was caused by plaintiff's emotional instability. Eldridge Hitt, vice president of Arthur Rubloff and Company, which managed the building, stated that after several talks with plaintiff he had the impression that she was quite nervous and easily upset emotionally; he added that the switchboard room was habitually short of telephone operators, and that the employees did not seem to want to remain in plaintiff's department.

In essence, plaintiff really bases her case upon the premise that discharge of a civil service employee is not authorized "except for cause," adopting the definition of that term given in Murphy v. Houston, 250 Ill App 385, 394 (1928): "some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place." After a careful reading of the testimony we are convinced that plaintiff was discharged, not for any political or capricious reasons, but for proved incompetency.

In Logan v. Civil Service Commission, 3 Ill2d 81, 119 NE2d 754 (1954), the court defined the scope of judicial review contemplated by the Administrative Review Act; under that act, it held (pp 86–87),

"the findings of the administrative agency on questions of fact are prima facie correct, (Ill

332

Rev Stat 1953, chap 110, par 274), however, they may be reviewed to determine whether they are supported by the evidence, and may be set aside only if they are against the manifest weight of the evidence. (Drezner v. Civil Service Com. 398 Ill 219; Secaur v. Civil Service Com. 408 Ill 197; Harrison v. Civil Service Com. 1 Ill2d 137.) Therefore, in determining the propriety of the order of the circuit court it is incumbent upon this court to ascertain whether the findings of the commission were manifestly against the weight of the evidence . . . ."

■■ The purpose of the Civil Service Act is to ensure a competent civil service for governmental bodies, and in furtherance of that end employees are assured of tenure in their positions provided they meet certain qualifications. They cannot legally be discharged for political or capricious reasons, but neither can they claim the right to be continued in their positions if they are incompetent.

We think that the case here under consideration was one for the informed discretion of the experienced members of the Civil Service Commission, and upon the record presented we would not be justified in holding that their judgment was contrary to the manifest weight of the evidence or reflected improper motivation.

Various other grounds are urged for reversal, but in the view we take we do not consider it necessary to pass upon them.

Accordingly, we hold that the judgment order appealed from is correct, and it is therefore affirmed.

Judgment order affirmed.

BRYANT and BURKE, JJ., concur.