CHARLES R. FARNY, Plaintiff-Appellee, *v.* THE CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellants.

(No. 11646;

Fourth District—March 1, 1973.

TRAPP, J., dissenting.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel,) for appellants.

Charles M. Given, of Mt. Vernon, and Pree & Pree, of Springfield, (Edward G. Pree, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

The circuit court of Sangamon County reversed a decision of the Civil Service Commission ordering the plaintiff, a deputy fire marshal, to report to the Chicago office of the Department of Public Safety (Law Enforcement), Division of Fire Prevention, if and when his ill health terminates and he is physically able to properly perform his duties. The circuit court ordered the plaintiff be returned to his previous territory in southern Illinois. In so doing, the trial court found that the geographical transfer of the plaintiff was not in good faith, was not in the best interest and welfare of the State service nor did it serve to promote the efficiency of that service. Other findings of the trial court are not at issue. From that decision of the circuit court, the Civil Service Commission and the Department of Public Safety appeal. We affirm.

The defendants agree that a geographical transfer must be made in good faith and in the best interest of the Department, and that that is the issue to be determined. Coupled with that issue originally was an appeal from an order discharging the plaintiff for failure to report within 5 days after being ordered to report to the Chicago office for duty. The hearing officer, the Commission and the trial court concurred in holding that the discharge of the plaintiff was illegal and there is no appeal from that conclusion. As will be noted later, it does have some bearing on the good faith of the transfer and whether or not it is for the best interest of the Department.

■■ We recognize that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct". (Ill. Rev. Stat. 1969, ch. 110, par. 274.) We recognize also that "it is only where the agency decision is without substantial foundation in the record or is manifestly against the weight of the evidence that it will be set aside, and it will not be disturbed merely because the evidence is conflicting". (*Kohout v. Civil Service Commission,* 28 Ill.App.2d 388, 171 N.E.2d 683; *Schwarze v. Board of Fire and Police Commissioners,* 46 Ill.App.2d 64, 196 N.E.2d 724; *Avent v. Police Board of City of Chicago,* 49 Ill.App.2d 228, 199 N.E.2d 637.) There is no conflict in the evidence here. The sole issue then is whether or not there is any substantial evi-

82

dence in the record to support the Commission's conclusion that the transfer was in good faith and in the best interest of the Department. The hearing officer of the Commission held that it was neither. The trial court held that it was neither. Two members of the Commission held that it was and one member filed a dissenting opinion in which he stated that he would restore plaintiff to the area to which he was assigned prior to the transfer without precluding the Department from then effecting Mr. Farny's transfer to an appropriate area for *bona fide* reasons. He concluded that if and when this was done and the plaintiff appealed the Commission could then reexamine the circumstances surrounding the transfer to determine whether it was justified by the then-existing situation.

■■ We find considerable difficulty in finding any substantial evidence supporting the conclusion of the Commission that the geographical transfer was in good faith or for the best interest of the Department. In the face of evidence that refutes a conclusion by an administrative agency, the findings of that agency are neither *prima facie* correct nor are they aided by the presumption that public officers will not do that which is prohibited and will do that which is required. Ballentine's Law Dictionary, 3d ed., defines substantial evidence as "evidence beyond a scintilla; evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred. * * * Such evidence as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes a case or defense". With this definition and the case law above stated in mind, we turn to the evidence.

The plaintiff was employed by the State in May 1961 and was certified in 1966 as a civil service employee. There was a change of administration in 1969 and the Department decided for the first time to inspect properties in the city of Chicago and decided to transfer experienced men to that area to carry out such inspection. Plaintiff was one of those men chosen to be transferred.

From May 1961 until May 1969, the plaintiff's territory consisted of four counties in the southern part of the State. Plaintiff lived near Carmi, Illinois, some 400 to 450 miles from Chicago. In September he was ordered to report to the Chicago office and again in October. Neither of these transfers ordered by the Department of Public Safety had the approval of the Department of Personnel as required by its Rule 2—420, which provides: "No employee may be transferred from one geographical location in the State to another without the approval of the Director". The first approval by the Department of Personnel was on November 4, 1969, and Farny received his first valid notice of transfer on December 3. At that time, Farny was still on sick leave from his Department. At no

time did the plaintiff report pursuant to any order and he was discharged. He appealed from that discharge and his appeal was upheld by the Civil Service Commission. He likewise appealed from the order of geographical transfer and that appeal was denied by the Commission but approved by the trial court.

Under these facts we are asked to bolster the findings of the Civil Service Commission with the presumption that public officials will act in good faith and with honest motives and that they will not do what the law forbids them to do and will do that which the law requires them to do. That presumption is pretty well torpedoed in this record by the fact that the Director of the Department of Public Safety twice ordered a geographical transfer without lawful authority. In the face of this evidence contradicting the presumption in this instance, that presumption fades into insignificance and its probative value is feather weight.

In addition, the testimony of the deputy director of the Department of Public Safety paints a picture of what was taking place. In May, the four counties that the plaintiff had been serving was cut to two and the testimony of the deputy director was that he had 13 new deputy fire marshals come to work all at once in his department and he had to make counties for them and separate them geographically; that the plaintiff was taking care of four counties satisfactorily and that he was able to cover that territory and that two would now be doing the work satisfactorily performed by one. By making the geographical transfer of Farny, a second vacancy in southern Illinois would be created wherein another one of the thirteen new employees could be utilized. This same witness testified that notwithstanding the newly adopted policy concerning the city of Chicago that Mr. Farny would not necessarily be in Chicago proper. "He may have relieved somebody in an outlying district which might know more about Chicago proper and who would have moved on in. That is what happened. Some of them moved on in that were familiar with Loop activities, and Mr. Farny no doubt would have been assigned to a territory either west or north of Chicago where we would have brought in another deputy to work in the Chicago Loop area". We have some doubts that this transfer was motivated by a new policy of the Department to begin to enforce the State standards of fire prevention in the city of Chicago where that city had previously taken care of its own fire prevention inspection. Further doubt is cast upon this geographical transfer when we consider the determination of the Commission itself in May 1970 in three other cases; to wit, *Eric Eagleston v. Dept. of Public Safety*, No. 71-69; *Erio v. the Dept. of Public Safety*, No. 76-69; and *Schuette v. Dept. of Public Safety*, No. 72-69. At p. 3 of the latter decision, the Commission found as follows:

"The evidence shows that petitioners Eagleston and Erio were sent to the Northwest part of the State of Illinois, at some considerable distance from Chicago and Cook County, and there performed duties of virtually the same nature that they performed in the area from which they were transferred. They were replaced with newly hired deputy fire marshals in their former areas, which illustrates that there was as much of a need to retain them in their former areas as to transfer them to new areas. Furthermore, there is nothing in the record to indicate that there were unusual and extra-ordinary factors in the Northwest area of the state which required the transfer of these petitioners. Another persuasive factor is that there was no evidence that petitioners Eagleston or Erio were ever called upon to participate in fire inspection activities in the City of Chicago * * *."

In addition, at p. 4 of the *Eagleston* case, the Commission stated: "* * * [T]hat, in the case of petitioner Eagleston, a 70 year old employee with long established family, business and social foundation in the community from which he was transferred, there is no discernible object that will redound to the benefit of the respondent (Department) by Eagleston's transfer".

■■■ The hearing officer sustained an objection to proof of Farny's family situation. He was in business in his home town, had an elderly mother living with him and a son requiring 24-hour personal attention. He likewise was the deputy fire marshal chosen from a territory the farthest removed from Chicago. While personal hardship is not *per se* an element necessarily considered, it would seem that in order to effectuate and implement the Civil Service law, there should be some assurance that a civil service employee will not be uprooted unceremoniously for nebulous reason by a geographical transfer and that like employees under like circumstances should be treated alike. The Commission in this instance did not follow the decisions above cited and we therefore conclude that the hearing officer was correct in his finding that "the good faith requirement and the efficiency and the welfare of the Department do not seem to be served by the geographical transfer of the petitioner from southern Illinois to the Chicago area". A court of review is required to consider the entire record in determining whether the findings are against the manifest weight of the evidence or whether there is any substantial evidence to support the Commission. (*Gasparas v. Leack*, 93 Ill.App.2d 99, 235 N.E.2d 359.) There is no substantial evidence in this case to support the findings of the Commission on the geographical transfer, particularly where the record establishes under like circumstances that a geographical transfer is unwarranted. Equal protection of the law before such a Commission as it is in the courts requires that

like facts and circumstances require a like decision—a decision that the plaintiff here did not receive. We do not intend to hold that individual inconvenience *per se* precludes geographical transfers or are always warranted when approved by the Director of Personnel. We do hold that the Civil Service Commission may not apply one rule in one case and a different rule in another where the circumstances are fundamentally the same on the issue of good faith, welfare of the Department and the necessity for the transfer.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN, P. J., concurs.

Mr. JUSTICE TRAPP dissenting:

The Civil Service Commission found that the transfer at issue was effected in good faith and not an act of political discrimination. The dissenting member of the Commission did not question these conclusions, but suggested that the transfer be not effective pending the determination of the need of the agency when Farny became fit for duty.

The record supports the conclusion that the Farny transfer was made pursuant to a reasonable plan for placing men best qualified by experience in the Chicago Division where needed for an expanded State program. It is shown that other men from the administrative division in Springfield were similarly transferred. It is not the province of a court upon review to conclude that the administrative agency might have better chosen some other means for filling the post created by the expanded coverage.

The testimony of Farny makes it clear that he will not accept a transfer under any circumstances. The hearing officer ruled that the claim of hardship allegedly resulting from the transfer was not relevant to the issue of its validity. The accuracy of the ruling is not challenged. Farny, however, persists in arguing such point before the hearing officer as well as here.

The principal opinion cites certain cases which the Civil Service Commission determined that the transfers there involved were not properly made. Neither such cases nor the facts of record therein are to be found in the abstract of proceedings considered by the Commission, but appear only in plaintiff's brief. In such form they are not a part of this review. In any event, we are not persuaded that orders of the Civil Service Commission finding certain transfers to be improperly made give grounds for concluding that the Commission erred in holding this transfer to be proper and valid.

I would reverse the order of the Circuit Court and affirm the order of the Civil Service Commission.