BERWYN SAVINGS AND LOAN ASSOCIATION *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS SAVINGS AND LOAN BOARD *et al.*, Defendants-Appellants.

(No. 59884; )

First District (2nd Division)—June 10, 1975.

Jay A. Schiller, of Chicago, for appellants.

Garvey and Novy, of Chicago (Thomas J. Garvey, Fredric G. Novy, and Dennis J. Vena, of counsel), for appellees.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Clyde Savings and Loan Association (hereinafter Clyde), one of numerous defendants in an administrative review[1] of a decision of the Illinois Savings and Loan Board (hereinafter Board), appeals from a judgment of the circuit court of Cook County reversing a decision by the Board which had approved the maintenance of a facility by Clyde to be located at 5817 West Cermak Road, Cicero, Illinois.

The appeal presents the question of whether the trial court was correct in holding that the Board's decision was contrary to the law, void and against the manifest weight of the evidence. Implicit in the legal questions raised by this appeal is the question of whether the Board's action violated one of its rules and regulations promulgated pursuant to statutory authority.

Plaintiffs, a number of State and Federal chartered savings and loan associations, filed a complaint for administrative review and declaratory judgment. The defendants, in addition to Clyde, were the Commissioner of Savings and Loan Associations for the State of Illinois (hereinafter Commissioner), the Board and its members individually, and other savings and loan associations no longer involved in this appeal.

The complaint in the trial court alleged that on July 2, 1970, Clyde submitted an application requesting a formal bylaw amendment for a

---

[1] The Administrative Review Act is Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*

change of location from 5817 West Cermak Road, Cicero to 7222 West Cermak Road, North Riverside; that on July 29, 1970, the Commissioner approved the application; that on February 8, 1972, Clyde submitted an application to maintain a facility at the old location (5817); that a public hearing on said application was held; that plaintiffs appeared as protestants and objected on the basis that said application was contrary to published regulations; that evidence was presented by the plaintiffs; and that on May 26, 1972, the Commissioner approved the facility application.

Thereupon, as alleged in the complaint, plaintiffs, as aggrieved parties to the Commissioner's order, filed a demand for a hearing which was held by an appointed hearing officer; that plaintiffs presented evidence in opposition to the Commissioner's order; that thereafter the hearing officer issued a report to the Board recommending that the Board approve the May 26, 1972, order of the Commissioner—in effect finding that a need exists for a facility of Clyde at 5817 West Cermak Road; and that on December 5, 1972, the Board confirmed the May 26 order. The plaintiffs further alleged, in the complaint, that the Board's December 5 action is contrary to the manifest weight of the evidence for various reasons not necessary to set forth in the consideration of this appeal, and contrary to section 1—9 of the Illinois Savings and Loan Act (the Act) (Ill. Rev. Stat. 1971, ch. 32, par. 709(b)(c)) and article X of the Rules and Regulations, Office of the Savings and Loan Commissioner effective December 10, 1971. Plaintiffs prayed that the Commissioner's order of May 26, 1972, be reversed. Count II of plaintiffs' complaint asked the trial court to make a binding declaration of rights under section 1—9(b) of the statute and article X of the rules.

Defendants' motion to strike Count I and dismiss Count II was denied. Thereupon an answer was filed which consisted of the entire administrative record of the proceedings before the Board, and, in effect, a denial of the allegations of the complaint.

In short, the record established that on July 29, 1970 the Commissioner approved Clyde's petition to relocate its savings and loan office from 5817 West Cermak Road to 7222 West Cermak Road, a move of approximately $1\frac{9}{10}$ miles.[2]

On February 8, 1972, approximately 18 months after the Commissioner approved Clyde's bylaw amendment to change its location, Clyde filed an application under article X of the Commissioner's Rules and Regulations to maintain a facility at its old location, 5817 West Cermak Road. Clyde had not actually moved its location at the time it filed its "facility"

---

[2] The July 29, 1970, action by the Commissioner was pursuant to the authority set forth in section 3—4 of the Act (Ill. Rev. Stat. 1969, ch. 32, par. 744(h)).

application. Public hearings were held and on May 26, 1972, the Commissioner entered an order approving the facility application.

Thereafter, in accordance with section 7—21 of the Act (Ill. Rev. Stat. 1971, ch. 32, par. 861), the plaintiffs appealed this order to the Board. As required by statute, the Board conducted public hearings and, after a favorable recommendation of the hearing officer, on December 5, 1972, the Board confirmed the May 26, 1972, order of the Commissioner approving Clyde's maintenance of a facility at 5817 West Cermak Road. Thereupon, plaintiff filed its complaint in the trial court, which found (1) the December 5, 1972, decision of the Board adversely affected the rights of the plaintiffs; (2) that Clyde's application for a facility is contrary to the law in that it was not filed simultaneously with Clyde's application to change its location (approved July 29, 1970); and (3) that the finding that a need exists for the facility is contrary to the manifest weight of the evidence.

I.

■■ The threshold question is the legal propriety of the action of the Board in approving the facility application. The statutory authority for a State chartered savings and loan association to establish a "facility" was P.A. 77—1584 which became effective September 20, 1971. That legislative enactment which was an amendment to section 1—9 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1969, ch. 32, par. 709(b)) permitted the "[E]stablishment of a facility, as defined by the Commissioner, in the case of a supervisory merger, * * * or, *a single facility in the case of a relocation.*" (Emphasis supplied.)

Pursuant to the authority set forth in the aforesaid amendment on December 10, 1971, the Commissioner adopted certain rules and regulations pertinent to the subject matter. Article X, section 1 provides:

> "Section 1. *Authorization.* Subject to the laws of the State of Illinois and this Article X, an association may maintain a facility:
> (b) At the existing location of an association's business office, incident to a change in the location of the association's business office, except, however, no association may maintain more than one facility as the result of a relocation."

Section 2 provides:

> "Section 2. *Approval by the Commissioner.*
> (b) An application for approval of the maintenance of a facility shall be filed with the Commissioner *simultaneous* with the filing of: (1) the application for approval by the Commissioner of a proposed merger, in the case of a facility authorized by Section 1(a) of this Article X, or (2) the application for approval by the

Commissioner of a by-law amendment providing for a change in the location of an association's business office, in the case of a facility authorized by Section 1(b) of this Article X." (Emphasis supplied.)

Section 3 provided for "Required Findings" by the Commissioner as to a facility authorized by section 1(b) which are:

"(i) That a need exists for savings and loan association services in the community or area of operation of the association's existing business office and the proposed facility will satisfy said need; or that it is in the best interest of the association that the proposed facility be maintained; and

(ii) That the facility can be maintained without undue injury to properly conducted existing associations; and

(iii) That the purposes of the Act will be furthered by maintenance of the facility."

Clyde was granted the authority on July 29, 1970, by the Commissioner to change its location from 5817 West Cermak Road to 7222 West Cermak Road. At that time there was no statutory authority to establish a "facility."[3] It was not until the approval of P.A. 77—1584 on September 20, 1971, and the promulgation on December 10, 1971, of article X of the Commissioner's rules that there was authority to approve a "facility."

Shortly thereafter on February 8, 1972, Clyde filed its application to maintain a facility at its prior location. This application was approximately 18 months after the Commissioner authorized Clyde to relocate. This facility application was not filed *simultaneously* with an application for approval, by the Commissioner, of a change in location. Thus this application did not fulfill the requirements of article X, section 2(b).

■■ The Commissioner found the facility application "meets all of the requirements of Article X of the Rules and Regulations of the Office of the Savings and Loan Commissioner." We disagree. We note the Commissioner and Board, who were party defendants in the trial court did not elect to file a brief in this court explaining how or under what theory the Commissioner's finding can or should be upheld. The fact that at the time Clyde filed its facility application it had not effected its change of location is an irrelevant happenstance which cannot alter the clear meaning, and mandate, of section 709(b) and section 2(b) of article X. As

---

[3] Section 1(c) of article X provides:

"(c) No business shall be conducted at any facility except the following:
 (i) Receiving deposits; and
 (ii) Cashing and issuing checks, drafts and money orders; and
 (iii) Changing money; and
 (iv) Receiving payments on existing indebtedness."

was said in *Peterson v. Board of Trustees* (1973), 54 Ill.2d 260, 264, 296 N.E.2d 721, "It is the duty of the court to enforce the law as enacted according to its plain and unmistakable provisions. [Citation.]" So too *is it our duty to enforce the rules and regulations, adopted pursuant to statutory authority, in accordance with their clear and unmistakable* provisions. The language of article X is perfectly clear and section 2(b) unmistakably provides for the "simultaneous" filing of a facility application with an application for a change of location of an association's business office.

■■ Clyde in its appeal argues that the trial court "overstepped the scope of judicial review as established by the Illinois Administrative Review Act, Section 274." (Ill. Rev. Stat. 1973, ch. 110, par. 274.) It is contended the trial court substituted its judgment on the evidence for that of the Commissioner and Board. It is true that the trial court found the findings of facts enumerated in the report of the hearing officer for the Board are each contrary to the manifest weight of the evidence. The trial court, as well as appellate courts, have the right—in fact the duty—to ascertain whether the findings and decisions of the administrative agency are supported by, or are against, the manifest weight of the evidence. (See *Davern v. Civil Service Com.* (1970), 47 Ill.2d 469, 471, 269 N.E.2d 713.) As we find the action by the Commissioner and Board as a matter of law void, we do not deem it necessary to determine whether the trial court was correct in its finding on the manifest weight of the evidence theory.

Clyde also urges "[t]he lower court also erred when it ruled that the Illinois Savings and Loan Board was strictly bound to the Rules and Regulations of the Office of the Commissioner of Savings and Loan Associations even though the rules clearly did not cover the factual situation presented to the Board." Clyde says to force the Board to strictly apply its regulations would bring about a clearly unfair result. As we said in *Margolin v. Public Mutual Fire Insurance Co.* (1st Dist. 1972), 4 Ill. App.3d 661, 667, 281 N.E.2d 728, "Having once established rules and regulations pursuant to statutory authority, an administrative agency is bound by those rules and regulations and may not violate them." Here the action of the Commissioner and Board clearly violated the Commissioner's rules, *i.e.*, section 2(b) of article X as well as section 1—9 of the Act.

The trial court's judgment, for the reasons indicated above, is correct. The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LEIGHTON and HAYES, JJ., concur.