LOCAL 253 DIVISION AFFILIATED WITH LOCAL 50, SERVICE EMPLOYEES INTERNATIONAL UNION AFL-CIO, CLC, Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Appellees.

Fourth District—No. 4—86—0569

Opinion filed August 13, 1987.—Rehearing denied September 17, 1987.

Bruce S. Feldacker and Bruce C. Cohen, both of Bruce S. Feldacker, P.C., of St. Louis, Missouri, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Charles J. Kolker, of Belleville, for respondent General Service Employees Local 382.

Edward L. Welch, of Edwardsville, for respondent East St. Louis School District No. 189.

JUSTICE KNECHT delivered the opinion of the court:

Local 253 Division affiliated with Local 50 of Service Employees International Union (complainant) filed unfair labor practice charges with the Illinois Educational Labor Relations Board (Board) against East St. Louis School District No. 189 (District). After investigation, the Board issued a complaint charging the District with violating sections 14(a)(1), (2), (3), and (5) (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (2), (3), (5)) of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1701 *et seq.*). After hearing, the Board hearing officer found complainant had not assumed exclusive representative status as a successor labor organization under the Act, and the District had not violated the Act as charged by refusing to remit dues to complainant, a labor organization which had not established majority status. The hearing officer dismissed the unfair labor

practice charges. On exceptions to the hearing officer's recommended decision and order, the Board affirmed the hearing officer's findings of fact and dismissal of the unfair labor practice charges, specifically adopting the hearing officer's reasoning for dismissal of the sections 14(a)(2) and (3) charges and the reasoning, as modified, for dismissal of the sections 14(a)(1) and (5) charges. Complainant has filed for direct review of the Board's decision (Ill. Rev. Stat. 1985, ch. 48, par. 1716(a)), arguing the Board's dismissal of the sections 14(a)(1), (2), (3), and (5) charges was against the manifest weight of the evidence. We disagree and affirm.

The background of the dispute from which the charges arose, as found by the hearing officer, was as follows. On July 1, 1980, the District entered into a collective-bargaining agreement with Local 253 as the exclusive bargaining representative of a unit comprised of the District's "utility-maintenance" employees, including:

"[A]ll regular custodial employees, ground crew, and truck drivers/mechanics, media technicians, warehousemen, utility maintenance cafeteria workers, auxiliary aides, [and] coordinators, but excluding substitute employees working in the Experimental Breakfast Programs."

By its terms the agreement automatically renewed itself from year to year unless superseded by a subsequent agreement between the parties.

Earlier in 1980, before negotiations began, Local 253 contacted Local 50, a nearby affiliate of Service Employees International Union (SEIU or International), for assistance in negotiations. In July 1982, Local 253 again contacted Local 50 for assistance in negotiating a collective-bargaining agreement. At a July 1982 meeting with Local 253 officers, the president of Local 50 suggested Local 253 consider merging with Local 50. Local 50 represented about 9,000 employees in the St. Louis area. According to testimony of Local 50 representatives, the possibility of a merger of Local 253 into Local 50 was again discussed at an August 1982 meeting with Local 253 officers which preceded a Local 253 general membership meeting. There was disputed testimony on whether notices of the Local 253 membership meeting mentioned the possibility of a merger of Local 253 into Local 50 as a topic for discussion.

There was testimony that about 80 to 100 of the 361 members of Local 253 attended the August 1982 membership meeting. Several witnesses testified the subject of the merger was brought up and discussed, a motion was made by one of the membership favoring the merger and was seconded, and a standing vote was taken, with the

membership voting about 88 to 2 in favor of the merger.

Beginning in August 1982, a series of letters was exchanged between the executive board of Local 253 and the International indicating resistance by Local 253 to merger with Local 50.

In December 1982, the International passed a resolution to merge small locals with larger locals to facilitate effective operation and organization of locals.

In March 1983, the International president advised Local 253's president the International was considering merging Local 253 with Local 50.

In July 1983, the International president signed an order directing the merger of Local 253 into Local 50 effective July 1, 1983.

After the International received petitions concerning the ordered merger, the International president directed a meeting be held to negotiate an acceptable merger agreement meeting the specific concerns of Local 253's officers and members.

In March 1984, the International president ordered the merger and consolidation of Local 253 into Local 50 effective March 1, 1984.

As a result of continuing discord involving Local 253 officers over the ordered merger, an action was filed in June 1984 by the International against Local 253 and its executive board officers to effectuate the merger. A consent judgment was entered later that month. (Service Employees International Union v. Local 253, Service Employees International Union (S.D. Ill. 1984), No. 84—5189.) On entry of the consent judgment, the District was notified: (1) Local 253 was merged into Local 50; (2) Local 253 would be a Division of Local 50; (3) membership dues-deduction authorization forms previously executed by members of Local 253 remained in effect; (4) the District's check forwarding monthly deductions "should be made out to 'Local 253 Division, Local 50 Service Employees International Union' "; and (5) the District should mail its check directly to the Local 50 offices indicated.

On July 25, 1984, the District's superintendent informed Local 50 the District would deduct Local 253 dues for employees with dues-deduction authorizations in effect, but for June and July it would hold the dues pending a legal opinion by its attorneys as to the impact of the enactment of the Illinois Educational Labor Relations Act on its obligation to recognize Local 253 as a Division of Local 50.

On September 10, 1984, at a general meeting of Local 50's membership, a resolution to merge Local 253 into Local 50, as a Local 50 Division, was approved.

On September 13, 1984, the District filed a petition with the

Board requesting an election be conducted among its "utility-maintenance" employees to determine whether Local 253 Division (complainant) had majority status. The District also informed affected employees that until the question was resolved previously executed dues-checkoff authorization forms would not be honored and dues payments could instead be remitted directly to any labor organization by each employee.

On October 10, 1984, complainant filed unfair labor practice charges with the Board against the District.

At hearing below, the hearing officer granted a motion to intervene by General Service Employees Local 382 (80 Ill. Adm. Code 1110.160(c), (f) (1985)) since, on May 15, 1985, Local 382 had filed a representation petition with the Board to represent a bargaining unit comprised of those employees whose representation is herein claimed by complainant.

So far as the record shows, the Board has not yet conducted a representation election among the District's "utility-maintenance" employees.

The crux of this case and the result reached requires discussion of two key factors, with which we begin our analysis. First, the complainant failed to avail itself of the procedures set forth in the Board's rules and regulations for the amendment of certification of a labor organization claiming status as exclusive bargaining representative. Section 1110.170 provides in pertinent part:

"An exclusive representative shall file a petition with the Board to amend its certification whenever there is a change in its name or structure. The petition shall be served on the employer prior to, or simultaneously with, its filing with the Board. The petition shall be signed and shall contain:
(1) the name and address of the employer;
(2) the name, address, and affiliation, if any, of the exclusive representative, as certified by the Board;
(3) a description of the proposed amendment; and
(4) the reasons for the proposed amendment." (80 Ill. Adm. Code 1110.170(a) (1985); see 8 Ill. Reg. 16300, 16325-26 (1984) (eff. Aug. 27, 1984).)

Section 1110.170 provides for posting of notice of the proposed amendment and for filing of objections with the Board. If objections are timely filed, the Board will proceed to hear them under its rules; and if no objections are timely filed, the Board may approve or disapprove the amendment, or take any other action on it necessary to effectuate the purposes of the Act. The Act provides in section 7 for

recognition of the exclusive bargaining representative for a unit of employees, and in section 8 for elections and certification. (Ill. Rev. Stat. 1985, ch. 48, pars. 1701, 1708.) Section 9 provides the Board shall promulgate rules and regulations governing the appropriateness of bargaining units, representation elections, employee petitions for recognition, and procedures for voluntary recognition of employee organizations by employers. Ill. Rev. Stat. 1985, ch. 48, par. 1709.

Both the statutory provisions and the Board rules and regulations are directed to implementing the legislation's public policy aims:

"Recognizing that harmonious relationships are required between educational employees and their employers, the General Assembly has determined that the overall policy may best be accomplished by (a) granting to educational employees the right to organize and choose freely their representatives; (b) requiring educational employers to negotiate and bargain with employee organizations representing educational employees and to enter into written agreements evidencing the result of such bargaining; and (c) establishing procedures to provide for the protection of the rights of the educational employee, the educational employer and the public." (Ill. Rev. Stat. 1985, ch. 48, par. 1701.)

The statute provides the Board is to designate the representative of a majority of employees in an appropriate bargaining unit in accordance with procedures set forth in the Act. (Ill. Rev. Stat. 1985, ch. 48, pars. 1707 through 1709.) The aim of these provisions is to ensure employees shall have the right to exercise their rights under section 3 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1703(a))—which includes both (1) the right to organize, form, join, or assist in employee organizations and to bargain collectively through representatives of their own free choice; and (2) except as provided in section 11 (Ill. Rev. Stat. 1985, ch. 48, par. 1711), the right to refrain from participating in any such concerted activities. In the exercise of free and voluntary choice, the majority of employees in an appropriate unit select an exclusive representative as designated by the Board's procedures, and the employer has a duty to bargain with this representative.

Union mergers, consolidations, or transfers of affiliation may present questions which may be resolved most expeditiously by the administrative procedures established by the Board. As stated in a leading treatise:

"In cases involving union successorship, as distinguished from a true change in representative, the [National Labor Relations Board (NLRB)] imposes upon the successor all of the obli-

gations and rights of the predecessor union. In those cases where the successor union represents a continuation of the predecessor, an employer is obligated to bargain with the successor.

On the other hand, if there are significant changes in the actual identity of the bargaining representative, the employer is faced with a question concerning representation and thus will not be required to bargain with the new representative until a majority status is determined through Board procedures. The issue of whether the successor union is merely a continuation of the predecessor under a new name or is a different bargaining agent may arise in a Section 8(a)(5) [29 U.S.C. sec. 158(a)(5) (1982)] unfair labor practice proceeding or in a representation proceeding involving efforts to amend the predecessor's certification.

When a change in bargaining representative is little more than a change in name, the employer must continue to recognize the successor bargaining representative, and both parties are bound by the unexpired collective bargaining agreement. Similarly, the Board has upheld the employer's duty to bargain where one local merged into a larger local of the same international, and where the old local was found to have retained its identity within the new local. The same rule has been applied where a division of a local union which had a contract with the employer split from that local and merged into a second local, but remained intact within the latter and retained its separate identity. However, the issue of whether and to what extent the superseded union must retain autonomy within the successor union remains unsettled. Further, if the predecessor union is a 'functioning, viable entity, and opposes amendment,' the Board will dismiss a petition to amend the certification." (I C. Morris, The Developing Labor Law 690-91 (2d ed. 1983).)

The Board's opinion notes its preference for parties in future merger situations to seek early settlement of their disputes through the amended certification proceedings.

■ This brings us to the second key factor in approaching the issues raised in this appeal. Under this statute, once the Board conducts an investigation and finds the charge states an issue of law or fact, it shall issue a complaint and hold a hearing on the charges. Section 15 of the Act provides that at the hearing, the charging party may present evidence in support of the charges and the party charged may file an answer, appear in person or by attorney, and present evi-

dence in defense against the charges. (Ill. Rev. Stat. 1985, ch. 48, par. 1715.) The Board's rules and regulations provide: "The charging party shall present the case in support of the complaint. *The respondent may present evidence in defense against the charges.*" (Emphasis in original.) (80 Ill. Adm. Code 1120.40(e) (1985); 8 Ill. Reg. 19413, 19419 (1984) (eff. Sept. 28, 1984).) We conclude in proceedings under the Act it is a *complainant's* burden in an unfair labor practice proceeding to present evidence sufficient to support findings of the unfair labor practice(s) alleged.

■■ ■ As in other administrative review cases, the findings and conclusions of the administrative agency on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) The function of a reviewing court is to determine whether the agency's findings are against the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) A court of review is not bound by the agency's interpretations of the law (*Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230), but the interpretation of the statute given by the agency charged with its administration is entitled to a degree of deference.

Complainant has not sought amended certification status under section 1110.170 of the Board's rules. Nevertheless, complainant argues it is entitled to recognition as a successor labor organization without proceedings before the Board and requests this court to reverse the Board; remand the cause to the Board; and direct the Board to order the District to (1) recognize it as the exclusive bargaining representative of the unit employees in question, (2) bargain with it in good faith, and (3) promptly remit to it all dues deductions for unit employees with checkoff authorizations on file naming either Local 253 or Local 253 Division affiliated with Local 50, SEIU.

■ Complainant first argues the Board erred in finding the District did not violate section 14(a)(5). (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(5).) Section 14(a)(5) prohibits employers, their agents or representatives from "[r]efusing to bargain collectively in good faith with an employee representative which is the exclusive representative of employees in an appropriate unit." Complainant disputes the Board's finding it is not the lawful successor to the predecessor Local 253 and, therefore, is not the exclusive bargaining representative within the meaning of the Act. In its opinion, the Board agreed with the hearing officer's determination that complainant had not assumed exclusive bargaining representative status as a successor labor organization under the test set forth in *Triton College,* 2 PERI par. 1013, Case No. 84—AC—0003—C (Illinois Educational Labor Relations

Board, October 16, 1985). In *Triton,* the Board adopted a narrow construction of its rules for amending a labor organization's certification:

"The Board takes judicial notice of the longstanding differences and shifts in doctrine that have arisen within both private and public sector labor relations agencies called upon to clarify the status of an exclusive bargaining representative because of a change in its name, structure or affiliation. These differences have concerned both [1] the kind and scope of the changes to be sanctioned under an amended certification proceeding, and [2] the election procedures utilized by the exclusive representative to effect the changes.

No clear consensus on 'good practice' in labor relations has developed over the years on either of these sets of issues. Moreover, Section VII of the Illinois Educational Labor Relations Act expressly obligates the Board to certify the exclusive bargaining representative to an educational employer through processes administered and controlled by the Board. Therefore, the Board intends to narrowly construe and interpret our rule on Petitions to Amend Certification, 80 Ill. Adm. Code Section 1110.170. Accordingly, we will issue an amended certification only when there is a modification in name or structure of an exclusive bargaining representative which does not result, directly or indirectly, in more than a minimal change in the locus of authority or functional control over either [1] the internal concerns of the organization, or [2] the exercise of rights and responsibilities with regard to the implementation of existing collective bargaining agreements (if any) or the conduct of any aspects of the broader collective bargaining relationship with the employer."

The Board noted the NLRB and the Federal courts reviewing NLRB determinations have reached varying results on what constitutes sufficient continuity in a labor organization before and after affiliation to avoid a question concerning representation; and the continuity standards applied by the public sector agencies of other States have also differed widely. This is necessarily so since such determinations are factual in nature and dependent on the situation presented by the particular case.

As is the case with any organizational and structural change, a merger may substantially change a union's relationship with the employees it represents. These changed circumstances may in turn raise a question of representation if it is unclear whether a majority of employees continues to support the reorganized union. In such situations,

the merger implicates the *employees' right* to select a bargaining representative and, to protect the employees' interests, the situation may require the Board to exercise its authority to conduct a representation election. (*Cf. NLRB v. Financial Institution Employees of America, Local 1182* (1986), 475 U. S. 192, 202, 89 L. Ed. 2d 151, 160-61, 106 S. Ct. 1007, 1013-14 (discussing effect of a new affiliation on a certified union's relationship with employees it represents).) Here, complainant does not dispute the propriety of the *de minimis* change standard applied by the Board, but maintains the Board erred in finding this merger resulted in more than a minimal change in the focus of authority or control over the internal affairs of the organization or its external relationship to the employer in collective-bargaining matters. Complainant argues a court of review should examine all of the evidence in opposition to the challenged finding as well as the evidence which tends to support it (*Gee v. Board of Review* (1985), 136 Ill. App. 3d 889, 896, 483 N.E.2d 1025, 1029); and findings and conclusions of an administrative agency on questions of fact should be set aside if contrary to the manifest weight of the evidence, which occurs when a conclusion opposite that of the agency is clearly evident (*Madonia v. Houston* (1984), 125 Ill. App. 3d 713, 716, 466 N.E.2d 648, 650). Complainant urges a conclusion opposite that of the Board is clearly evident insofar as the integrity of its decision-handling processes.

We disagree. A *de minimis* change standard denotes a low evidentiary requirement. We find the changes imposed by complainant upon the International's order for consolidation and merger, as set forth in the Board's opinion, suffice to meet this *de minimis* standard. The Board referred to the following changes imposed by Local 50 upon the International's merger order:

"1. Former Local 253 became a division of Local 50.

2. Division 253 was governed by the constitution and bylaws of Local 50.

3. Local 50 assumed indebtedness incurred by former Local 253 including legal expenses, Illinois property tax and sewage bills.

4. The structure of elected offices at the local level was changed to reflect control by Local 50. The former offices of local president, vice-president, recording secretary (treasurer) and business representative became division chairperson, vice-chairperson, secretary and board members.

5. Local 50's existing officers were given authority over the day-to-day operation of Division 253.

6. Additionally, Local 50 appointed a full-time business representative to meet with the Employer to administer the contract on behalf of Division 253's employees."

Various interrelated factors must be considered in determining the existence, or likelihood, of continuity between predecessor and successor labor organizations in the collective-bargaining context. These include: (1) the change, if any, in the conduct of negotiations and whether the organization claiming successor status assumes the obligations, as well as the rights, of the predecessor organization; (2) any changes in the officers and leadership of the organization; (3) the terms of the constitution and bylaws of the predecessor and successor organizations, and whether they are significantly similar despite any change in structure and/or name of the organization; and (4) conduct and alterations in the day-to-day relationship between the exclusive representative, as conducted by the predecessor organization, and the employer. See *Lake Land Community College District No. 517*, 1 PERI par. 1147, Case Nos. 85—AC—0001—S, 85—AC—0002—S, 85—AC—0003—S, 85—AC—0004—S, 85—AC—0005—S (Illinois Educational Labor Relations Board, July 10, 1985) (and cases cited therein).

■ Here, although the first factor cited above may have been met (as noted by the Board in its third point), consideration of the evidence on other factors demonstrates a degree of change which meets the *de minimis* change test.

The evidence showed a change in the structure of offices elected at the local level, including the appointment of a full-time business representative to meet with the employer to administer the contract on behalf of the employees of the bargaining unit. According to the evidence, under the predecessor Local 253, the business representative was elected by the members of the local. Under complainant's organization, the position was appointed by complainant's president. The focus in determining a claim of successor-organization status is whether the organization in question continues to be the one which the employees freely chose to represent them. Therefore, continuity in (1) the officers and leadership of the organization, and (2) its structure and method of operation are relevant. Any significant change in leadership may be deemed indicative of the absence of continuity "where it counts, in a bargaining relation" (*Retail Store Employees Union, Local 428 v. NLRB* (9th Cir. 1975), 528 F.2d 1225, 1228 (while formal local officers did participate in communications with management in seeking negotiations, none participated in actual negotiations, suggesting an absence of continuity, and record contained no evidence of unit autonomy to counter inference; held, union did not meet its bur-

den of showing NLRB lacked substantial evidence for its conclusion employer did not commit an unfair labor practice by refusing to bargain without an NLRB-conducted election to establish union's majority status when small independent union merged with Local 428)), as the same persons would not be communicating with management (see *St. Vincent Hospital v. NLRB* (10th Cir. 1980), 621 F.2d 1054, 1057 (and cases cited therein)). NLRB decisions finding continuity in mergers between two locals of the same international union emphasize the maintenance of unit autonomy and the continuation of established procedures (*Retail Store Employees Union, Local 428 v. NLRB* (9th Cir. 1975), 528 F.2d 1225, 1228 (and cases cited therein)), a position which has been adopted by other State boards and commissions (*Lake Land Community College District No. 517,* 1 PERI par. 1147, Case Nos. 85—AC—0001—S, 85—AC—0002—S, 85—AC—0003—S, 85—AC—0004—S, 85—AC—0005—S (Illinois Educational Labor Relations Board, July 10, 1985 (and cases cited therein)).

While differences in the constitution and bylaws of the predecessor and successor organizations are an important factor for consideration, no meaningful comparison can be made here since complainant placed the International's constitution and its own constitution and bylaws into the record, but failed to present evidence of the predecessor Local 253's (constitution and) bylaws. We reject complainant's argument that it is clear the constitution and bylaws of both locals were substantially similar since both were operating under the aegis of the International and were bound by the International's constitution and bylaws.

There was a change in leadership officers, as well as in the structure of leadership offices, which was viewed by the Board as having an effect on day-to-day operation of complainant's organization in relation to the employer. The complainant appointed a business representative to meet with the District, when previously the members of Local 253 elected a member to serve in this capacity.

Complainant's president informed members of the predecessor Local 253 that their former elected officers no longer had the powers they previously had and were not authorized to hold meetings or use the predecessor local's funds for any purpose. It was not until September 1984, at a general membership meeting of Local 50, that a resolution to merge the predecessor Local 253 into a Division of Local 50 was approved. Restructuring of Division offices eliminated the local's elected offices of financial secretary and business representative. Complainant had no officers for several months after the International ordered the merger. Evidence was not presented to show the

functions the newly elected Division officers actually performed, as compared to the functions performed by officers of the predecessor Local 253. Similarly, complainant's evidence was lacking on the handling of grievances and negotiations by stewards and the business representative of the predecessor Local 253, as compared to complainant's handling of grievance and negotiation matters. A continuity-of-representation issue depends on a factual determination which the Board makes initially, and a reviewing court is bound to follow so long as the determination is supported by evidence on the record as a whole sufficient to meet the applicable standard. The record supports the Board's determination that complainant did not meet its burden of showing continuity and autonomy based on a de minimis change standard.

■ Complainant next maintains the Board erred in finding the District did not violate section 14(a)(3) of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(3).) Section 14(a)(3) prohibits educational employers, their agents or representatives from "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization." Complainant argues the District's refusal to remit dues to it placed bargaining-unit employees in jeopardy of losing certain benefits and even membership itself in Local 50 and, therefore, clearly constituted discrimination in regard to the tenure or terms of employment of the unit employees and discouraged their membership in Local 253 Division (complainant) in violation of section 14(a)(3) of the Act.

The hearing officer found that under section 14(a)(3), a complainant must show the employer (1) discouraged membership in complainant, (2) by means of discrimination, (3) in regard to wages, hours, or terms or conditions of the unit employees' employment with the District, and (4) the District's intent was to discriminate against the employees because of their union activity. The hearing officer concluded there was no showing the District's intent was to discriminate against employees because of their union activity, and the facts did not support finding the District acted to discourage employees' membership in complainant. In discussing this issue, the hearing officer found the District acted in good faith. The hearing officer found the District ceased deducting dues (1) only because it doubted complainant's majority status, as evidenced by the District's filing a representation petition with the Board to resolve this issue; (2) pending a ruling by the Board; and (3) subsequently began to deduct dues when employees submitted forms for dues deductions authorizing payment to complain-

ant by name (rather than to predecessor Local 253). The hearing officer further found the District's conduct was not "inherently destructive" of employee rights under section 3 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1703). The Board in its opinion and order affirmed the dismissal of the unfair labor practice charge and specifically adopted the hearing officer's reasoning.

On appeal, complainant argues the Board erred in finding the District did not violate section 14(a)(3), maintaining there is no evidence of record from which the hearing officer reasonably could infer the District acted in good faith in ceasing to deduct dues or in filing the representation petition to resolve the issue of majority status and the Board erred in its conclusion of law that refusing to honor the dues-checkoff authorizations on behalf of Local 253 was not "inherently destructive" of employee rights under section 3 of the Act.

Complainant's arguments miss the focus of the inquiry on an unfair labor practice charge under section 14(a)(3). The United States Supreme Court has defined the nature of prohibited conduct in construing the comparable provision of the Labor Management Relations Act (LMRA) (29 U.S.C. sec. 158(a)(3) (1982)):

"The language of section 8(a)(3) is not ambiguous. The unfair labor practice is for an employer to encourage or discourage membership by means of discrimination. Thus this section does not outlaw all encouragement or discouragement of membership in labor organizations; only such as is accomplished by discrimination is prohibited. Nor does this section outlaw discrimination in employment as such; only such discrimination as encourages or discourages membership in a labor organization is proscribed.

The relevance of the motivation of the employer in such discrimination has been consistently recognized under both section 8(a)(3) and its predecessor. *** Courts of Appeals have uniformly applied this criteria, and writers in the field of labor law emphasize the importance of the employer's motivation to a finding of violation of this section. Moreover, the National Labor Relations Board in its annual reports regularly reiterates this requirement in its discussion of section 8(a)(3). For example, a recent report suggests that 'upon scrutiny of all the facts in a particular case, the Board must determine whether or not the employer's treatment of the employee was motivated by a desire to encourage or discourage union membership or other activities protected by the statute.' " (*Radio Officers' Union v. NLRB* (1953), 347 U.S. 17, 42-44, 98 L. Ed. 455, 478-79, 74 S.

Ct. 323, 337.)

As with any charge of an unfair labor practice, it was incumbent on complainant to prove the alleged violation of the Act. Complainant had to establish the District acted with intent to discriminate, either by specific evidence of the District's motive or by showing its conduct was "inherently destructive" of employee rights. Neither the burden of proof nor the burden of persuasion shifts to the charged party until the complaining party has presented such evidence as would amount to a *prima facie* case showing violation of the section charged. On the evidence presented, it was not incumbent on the District to prove it acted in good faith or without intent to circumvent its employees' rights.

The record includes a dues-checkoff form executed on behalf of the predecessor Local 253 under the collective-bargaining agreement with the District (prior to the International's order of merger with Local 50), respondent's (the District's) exhibit No. 34, which provided:

"BUILDING SERVICE EMPLOYEE'S
INTERNATIONAL UNION

Affiliated with American Federation of Labor and Congress of Industrial Organizations

1721 STATE STREET     EAST ST. LOUIS, ILL. 62205
(618) 874-9139

I     [name]     employed by School District 189, authorize the Board of Education to deduct from my check, monthly dues for Union Local #253. I am employed at     [name]     School.

                                                  [name]
                                              (Signature)

Soc. Sec. No.     [number]

     [date]
     (Date)"

In July 1984, on the day following entry of the consent judgment order between the International and the officers of the predecessor Local 253, Local 50 advised the District of the merger by letter, stating Local 253 had merged into Local 50 and the District's employees, formerly represented by Local 253 as to wages, hours, and working conditions, would not be represented for all purposes by Local 50. The letter, complainant's exhibit No. 30, continued:

"Local 253 will now be a division of Local 50. Membership dues deduction authorization forms previously executed by the members of Local 253 remain in effect. Your check forwarding the monthly deduction should be made out to 'Local 253 Division, Local 50 Service Employees International Union.' Please mail your check directly to the Local 50 offices indicated below."

As found by the hearing officer below, the president of Local 50 testified the District had in fact honored dues-authorization forms and remitted dues to complainant as of June 1985, but only for those employees who directed payment to the new Division (by name).

Complainant has not shown any purpose of the District for not honoring dues-checkoff authorizations or remitting dues to support an inference that the District's intent was to discriminate against the employees because of their union activity. Neither was it proved the District's conduct was "inherently destructive" of employee rights. (See, *e.g.*, *Radio Officers' Union v. NLRB* (1953), 347 U.S. 17, 45-46, 98 L. Ed. 455, 479-80, 74 S. Ct. 323, 338-39.) Despite complainant's arguments on appeal, it presented no evidence at the hearing as to what amounts, if any, remained owing to it by any District employee. Neither was evidence presented of any resulting discrimination by the District (or complainant) against any employee. (See generally I C. Morris, The Developing Labor Law ch. 7 (2d ed. 1983 & 2d Supp. 1982-1985).) We conclude the Board correctly dismissed the section 14(a)(3) charge as complainant did not meet its burden of proof.

■ Complainant next argues the Board erred in finding the District did not violate section 14(a)(1) (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(1) (interfering, restraining, or coercing employees in the exercise of the rights guaranteed under the Act)) by refusing to submit dues in compliance with checkoff authorizations. The Board's opinion affirmed the dismissal of the section 14(a)(1) charge and adopted the hearing officer's reasoning as modified in its opinion. Complainant acknowledges that following the March 1984 effective date of the merger, former officers of predecessor Local 253 circulated petitions revoking their dues-checkoff authorizations. These petitions, complainant's exhibit No. 25, are captioned "TO THE BOARD OF EDUCATION SCHOOL DISTRICT 189," and provided as follows: "We, the undersigned request that you discontinue the deduction of union dues for Local 253 check-off." Complainant also acknowledges the person who served as president of the predecessor Local 253 answered affirmatively when asked at hearing whether other employees reported or came to the District requesting revocation of their dues-checkoff authorizations. The record contains an example of a letter

from an employee seeking revocation of her dues-checkoff authorization to Local 253 (respondent's exhibit No. 35).

The Board has recognized employees have a right under the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24.21.1) to authorize dues payment from their salaries directly by the employer to any labor organization. (*Oak Lawn Community High School District No. 218*, 2 PERI par. 1014, Case No. 85—CA—0002—C (Illinois Educational Labor Relations Board, November 20, 1985).) The right created by the School Code necessarily runs to the *employee* and, as stated in *Oak Lawn*, it is not material whether the beneficiary of the dues authorization is the exclusive bargaining representative. The record shows the District complied with employees' requests for dues checkoff once new authorization forms were submitted specifically authorizing checkoff on behalf of complainant, as shown in respondent's exhibit No. 36, naming "Local 253 Division, affiliated with Local 50 S.E.I.U."

■ On review of the record, the Board concluded confusion existed as to the validity of the original checkoff-authorization forms naming Local 253, and there was a factual dispute as to where and to whom to send money collected under the checkoffs previously executed on behalf of Local 253. The District advised employees to forward their dues to the labor organization of their choice for a short period of time and then honored dues-checkoff authorizations naming complainant. On this record, the Board concluded the employer had not violated section 14(a)(1) by its conduct with respect to the dues-checkoff. We agree.

The record shows the District was advised of the consent judgment and order of the Federal District Court entered in June 1984 by letter dated July 6, 1984, from Local 50's counsel to the District's legal counsel. The letter referred to the ordered merger and some of the structural and organizational changes which accompanied it and stated a copy of the consent judgment was enclosed. (See complainant's exhibit No. 34.) There was evidence presented to show (1) dues revocations were submitted to the District, (2) employees signed petitions asking that their dues-checkoff authorizations to Local 253 not be honored, and (3) some employees submitted new authorizations forms on behalf of complainant. Taken in this context, the Board's determination was supported by the evidence. As stated in *Radio Officers' Union v. NLRB* (1953), 347 U.S. 17, 48-49, 98 L. Ed. 455, 481-82, 74 S. Ct. 323, 340:

"An administrative agency with power after hearings to determine on the evidence in adversary proceedings whether viola-

tions of statutory commands have occurred may infer within the limits of the inquiry from the proven facts such conclusions as reasonably may be based upon the facts proven."

The Board rejected complainant's argument that the consent order in the Federal district court action expressly held the petitions revoking dues checkoffs executed in favor of the predecessor organization as null, void, and of no legal effect. We agree. The District was not a party to that suit, nor were the District's employees individually. The consent judgment was entered on a complaint by the International against Local 253 and its former officers individually and as officers, agents, and members of the local. We agree with the Board's conclusion that the Federal court proceeding did not dispositively deal with the matter of recognition status under the Act and, therefore, was not binding on the Board in this case. See generally *Newport News Shipbuilding & Dry Dock Co.* (1980), 253 N.L.R.B. 721, *enforced sub nom. Peninsula Shipbuilders' Association v. NLRB* (4th Cir. 1981), 663 F.2d 488.

■ Complainant next argues the Board erred in dismissing the section 14(a)(2) charge. Section 14(a)(2) prohibits educational employers from "[d]ominating or interfering with the formation, existence or administration of any employee organization." Complainant maintains the District's failure to honor dues-checkoff authorizations and refusal to remit dues to complainant interfered with its existence and administration.

Applying the traditional interpretation of employer interference, the hearing officer found the evidence failed to show the District violated section 14(a)(2): the District refused to recognize complainant as the exclusive representative because it doubted complainant's majority status—and thus neither aided complainant in gaining majority status nor favored another organization over complainant. The hearing officer concluded remitting dues to complainant in view of the circumstances would have been tantamount to supporting an organization which had not established majority status, the type of conduct section 14(a)(2) was designed to prohibit. (See *Olympia Plastics Corp.* (1983), 266 N.L.R.B. 519; *Monfort of Colorado, Inc.* (1981), 256 N.L.R.B. 612, *enforced sub nom. Industrial, Technical, & Professional Employees Division, National Maritime Union v. NLRB* (9th Cir. 1982), 683 F.2d 305.) The Board affirmed dismissal of the section 14(a)(2) charge and adopted the hearing officer's reasoning. We conclude the evidence supported the Board's dismissal of the section 14(a)(2) charge.

The NLRB and Federal courts, construing a similar provision of the LMRA (29 U.S.C. sec. 158(a)(2) (1982)), have generally looked to

the principle that an employer is required to remain neutral with respect to its employees' choice of a bargaining representative. (See, *e.g., International Ladies' Garment Workers' Union v. NLRB* (1961), 366 U.S. 731, 737, 6 L. Ed. 2d 762, 767, 81 S. Ct. 1603, 1607.) Neutrality is particularly important in a context which raises questions concerning representation. (See, *e.g., Haddon House Food Products, Inc. v. NLRB* (3d Cir. 1985), 764 F.2d 182, 183, *cert. denied* (1986), 475 U.S. 1011, 89 L. Ed. 2d 303, 106 S. Ct. 1187.) Violation of this section may result from conduct evidencing a breach of neutrality.

Under the Act and the School Code, as under the LMRA, covered employees have a right to sign dues-checkoff authorization and deduction forms which the employer must honor. Employees have a corollary right under section 3 of the Act to offer such support to the representative organization of their individual choice, or to refrain from supporting any or all such organizations (except as required by lawful nonmember fair-share provisions (Ill. Rev. Stat. 1985, ch. 48, par. 1711)). The employer's duty at all times is to remain neutral. There may be no employer domination of a labor union and no so-called "sweetheart agreement" between the employer and its selected bargaining representative. (See generally I C. Morris, The Developing Labor Law 166 (2d ed. 1983); 35-36 (2d Supp. 1982-1985); see, *e.g., Precision Carpet, Inc.* (1976), 223 N.L.R.B. 329.) An employer must honor employee dues-checkoff authorizations, but has a concomitant duty to pay these monies to the organization designated by the individual employee, and to seek resolution of legitimate questions as to the status of the legal entity which the employee authorization specifies.

■■■ Under the comparable LMRA provision, an employer may be found to have committed an unfair labor practice when it knowingly acceded to an unlawful demand or recognized a union in face of the representation question. (See *International Ladies' Garment Workers' Union v. NLRB* (1961), 366 U.S. 731, 6 L. Ed. 2d 762, 81 S. Ct. 1603; Zipp, *Rights and Responsibilities of Parties to a Union-Security Agreement*, 33 Lab. L.J. 202, 205 & n.8 (1982).) An employer may be liable for reimbursement to its employees or the organization entitled to dues by employee checkoff authorizations for dues, fees, and assessments paid during specific periods to the wrong organization. See Annot., *Power of the National Labor Relations Board under Section 10(c) of amended National Labor Relations Act to order reimbursement of union assessments, dues, or fees,* 6 L. Ed. 2d 1274, 1286 & n.10 (1961 & Later Case Service); see generally *Newport News Shipbuilding & Dry Dock Co.* (1980), 253 N.L.R.B. 721, *enforced sub*

372

*nom. Peninsula Shipbuilders' Association v. NLRB* (4th Cir. 1981), 663 F.2d 488.

On review of the record as a whole, we conclude complainant did not meet its burden of proof on the unfair labor practices charged, and the Board's dismissal of those charges is therefore affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.