GARLAND L. SHEFF, Plaintiff-Appellee, v. BOARD OF REVIEW, ILLINOIS DEPARTMENT OF LABOR, *et al.*, Defendants-Appellants (Martin's Super Foods, Defendant).

Fifth District No. 5—84—0011

Opinion filed October 10, 1984.

348

Neil F. Hartigan, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of counsel), for appellants.

Sharon Sigwerth Costa, of Mt. Vernon, for appellee.

JUSTICE JONES delivered the opinion of the court:
Plaintiff, Garland L. Sheff, brought this action under the Administrative Review Act. (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) Plaintiff sought review of the decision of the Illinois Department of Labor, Board of Review, which found that he was not qualified for un-

employment benefits because his employer, Martin's Super Foods, had discharged him for misconduct connected with his work. (Ill. Rev. Stat. 1983, ch. 48, par. 432A.) On administrative review, the circuit court reversed the decision of the Department. The trial court was of the opinion that plaintiff was fired because he had worked for defendant for a number of years and that the employer discharged plaintiff because Sheff was unhappy with his 32-hour workweek and because defendant could hire cheaper help, reasons that do not constitute misconduct on plaintiff's part. The Department has appealed, contending that the Board of Review properly concluded that the behavior plaintiff displayed toward his employer during a February 4, 1983, conference constituted misconduct connected with his work within the meaning of section 602A of the Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 432A).

The referee found that plaintiff was discharged for misconduct connected with his work in that his disrespectful outburst toward the employer was an act of insubordination, which reflects a wilful or wanton disregard of claimant's responsibilities and his employer's interest. The Department of Labor, Board of Review, confirmed the finding of fact and the decision of the referee.

At the hearing, plaintiff testified that he had worked at Martin's Super Foods since the beginning of 1975 until his discharge on February 4, 1983. His wage at the time of termination was $7.50 per hour. Plaintiff's last duty was that of a "carry-out boy." Plaintiff further testified that he could not make any substantial changes or additions to his statements. Plaintiff admitted that he had raised his voice at the conference.

In his application for unemployment benefits, plaintiff stated that he had asked for a conference. He further stated in the application that Andrew Morgan, Martin's Super Foods' store manager, informed him that there was no place for plaintiff, that plaintiff had no responsibility and that two people could be hired for what plaintiff was paid. Mr. Morgan had encouraged him to apply for jobs with the National Guard and Pepsi Cola. On February 4, plaintiff was trying to help a customer start his automobile when Scott Harris, another employee, asked plaintiff what he was doing. Plaintiff told Harris to go back to his groceries. When Curtis Chancy, grocery manager, told Mr. Morgan during the conference of the argument that plaintiff had had with Harris, Mr. Morgan discharged plaintiff. Prior to February 4, 1983, plaintiff had protested the reduction in his hours per week worked from 40 to 32.

Morgan testified that on February 4, 1983, plaintiff asked for a

conference. It was granted and took place in Mr. Morgan's office. Plaintiff stated that he was unhappy with his duties, and Mr. Morgan replied that plaintiff had been assigned different jobs in the past and that plaintiff had not been happy in those positions. Mr. Morgan informed plaintiff that he felt that plaintiff did not accept responsibility on those jobs. Plaintiff became angry and upset, and he raised his voice in disagreement to twice his normal speaking voice. Mr. Morgan felt that he was not getting respect and discharged plaintiff. Mr. Morgan admitted that plaintiff did not use foul language or call him names. After being discharged plaintiff did not refuse to leave the premises. Mr. Morgan admitted that he might have told plaintiff at one time that he could hire two people to replace him and that in a previous conversation he had suggested that plaintiff look for other employment, as plaintiff was not happy at Martin's.

 Our duty in an administrative review case is similar to that of the circuit court, to examine the entire record in order to ascertain whether the findings and decision of the administrative agency are against the manifest weight of the evidence. When an administrative order is contrary to the manifest weight of the evidence, it is the duty of the appellate court to affirm the action of the circuit court in setting the order aside. (*Derringer v. Civil Service Com.* (1978), 66 Ill. App. 3d 239, 383 N.E.2d 771.) It is true, as appellants assert, that innumerable decisions of our courts recite that it is not the proper function of a court to reweigh the evidence previously presented to an administrative decision-maker. (See, *e.g., Board of Trustees v. Illinois Community College Board* (1976), 43 Ill. App. 3d 956, 357 N.E.2d 1222.) But we could not perform our reviewing function at all without weighing the evidence. The distinction is that we do not reweigh the evidence as we would if we were the original decision-maker, attempting to decide in the first instance whether the party with the burden of proof has proved the material elements of his case by a preponderance of the evidence. Our weighing is done on a different scale. Our function is merely to decide whether the manifest weight of the evidence of record favors the party who did not prevail before the agency. If it does not, we must affirm even if we think that the preponderance of the evidence is to the contrary. But if, after a review of all the evidence, we think it evident that the administrative decision was wrong, it is our duty to reverse. *Derringer v. Civil Service Com.* (1978), 66 Ill. App. 3d 239, 383 N.E.2d 771.

██ We have examined the entire record on appeal and find that the manifest weight of the evidence of record favors the party who did not prevail before the agency. As will be discussed later in this

opinion, the acts relied upon do not rise to the level of justification to discharge an employee for cause. Plaintiff was being paid $7.50 per hour, not an inconsiderable sum for a "carry-out boy." Plaintiff testified that the store manager had told him that two persons could be hired for what plaintiff was being paid. The store manager conceded that he might have stated the foregoing to plaintiff. There was no attempt to determine the factual basis of the dispute between Harris and plaintiff. It appears that the store was looking for an excuse to discharge plaintiff. While the legal authority to discharge plaintiff is not even at issue in this cause, the employer cannot on the facts successfully claim to have discharged plaintiff for misconduct connected with work. This court believes, as the trial court found, that plaintiff was terminated because he protested the decrease in his working hours and because someone could be hired to do the job at a lesser hourly wage than plaintiff.

■■ ■ But even assuming, *arguendo*, that the Board's finding of fact was correct, it was incorrect in its determination of the legal effect of those acts. As we held in *Granite City Steel v. Board of Review* (1979), 68 Ill. App. 3d 264, 268, 385 N.E.2d 931, 934:

> " '[W]e are not bound to give the same measure of deference to an administrative agency's construction of a statute that we give to its findings of fact. While we might affirm a factual conclusion as not against the manifest weight of the evidence though we would have reached the opposite conclusion, we cannot let stand a decision based upon an erroneous construction of a statute.' "

The question thus becomes whether plaintiff's act of insubordination is sufficient to result in discharge for "misconduct connected with his work" as used in par. 432A:

> " ' "Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. \*\*\*" ' " (68 Ill. App. 3d 264, 271, 385 N.E.2d 931, 936.)

In the case at bar, the acts relied upon to deny unemployment benefits do not rise to the level of justification for discharge due to mis-

conduct so as to deprive plaintiff of his statutory right to unemployment compensation. Plaintiff raised his voice in the privacy of the manager's office. There was no abusive language or vilification of the manager. Further, there is no evidence that plaintiff threatened Mr. Morgan either physically or verbally. Being merely argumentative is not sufficient for discharge for misconduct. See *Payne v. Antoine's Restaurant* (La. App. 1969), 217 So. 2d 514, in which the Louisiana Appellate Court applied a standard of misconduct which is almost identical to the standard applied by this court and quoted above.

For the foregoing reasons, we affirm the judgment of the circuit court of Jefferson County.

Affirmed.

WELCH, P.J., and KASSERMAN, J., concur.