PAULINE GEE, Plaintiff-Appellee, v. THE BOARD OF REVIEW OF THE DEPARTMENT OF LABOR et al., Defendants-Appellants.

First District (4th Division)   No. 84—2775

Opinion filed September 26, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Candida Miranda, Assistant Attorney General, both of Chicago, of counsel), for appellants.

Susan Burzawa, of Loyola University Community Law Center, of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

Plaintiff, Pauline Gee, brought an action for administrative review of a decision of the defendant, Board of Review of the Illinois Department of Labor (Board), which denied her unemployment insurance benefits. After a hearing, the trial court reversed the Board's decision. On appeal, the Board contends that it properly determined that plaintiff was ineligible to receive unemployment benefits due to her

misconduct in connection with her work.

Plaintiff's complaint for administrative review alleged that the Board abused its discretion in failing to consider her evidence and rendered a decision contrary to law and contrary to the manifest weight of the evidence in finding her ineligible for benefits as a result of misconduct in connection with her employment by Certified Automotive (Certified).

The common-law record shows that plaintiff's claim for benefits alleged that Certified shortened her time, but that when she asked about it, she was told it was not her concern; that she did not get along with her supervisor; and that, when her supervisor asked her to work one Saturday and she could not, he discharged her. Certified responded that she was discharged for insubordination; that on the date of her discharge she asked her supervisor if she could leave work an hour early; that her supervisor informed her that she could if her duties were completed; however, when it later became apparent that she would not complete her duties, the supervisor told her that she would not be able to leave early; that plaintiff was terminated when she then became irate, yelled and insisted that she would leave early; and that she had received prior verbal warnings for loud outbursts in the office. The claims adjudicator then determined that plaintiff was discharged because she would not work on a Saturday and did not get along with her supervisor and that she was eligible for benefits because the reason for her discharge did not constitute a wanton or wilful disregard of the employer's interests.

Certified then filed a notice of appeal to the referee who conducted a hearing at which plaintiff appeared *pro se*. The employer was represented by counsel. Phil Cassata, plaintiff's former supervisor at Certified, testified that plaintiff's discharge was precipitated by the fact that she became adamant about leaving work early, thus ignoring warnings from previous outbursts. He further testified that he denied the request because they had work to complete before the day was finished. Plaintiff went back to work for 10 or 15 minutes, then became irate, returned to the witness, and started to disrupt other employees and visitors in the office. The witness testified that plaintiff did not say she would leave whether or not she had permission, nor did she use abusive language, but rather she kept insisting that she be allowed to leave in a high tone of voice which became disruptive to other people trying to conduct telephone conversations in the office. According to the witness, plaintiff's disruptive behavior was a repetitive situation, and he had previously given her about five verbal warnings, including a final warning approximately a week to 10 days

before her dismissal, that further outbursts would not be tolerated and that she would be terminated.

Plaintiff, a former accounts receivable clerk for Certified, then testified that on the day of her discharge she told Cassata that she would work through her lunch hour if she could leave work an hour early; he agreed. She further testified that she planned to finish all her work before she left. When Cassata later refused to let her leave early, she told him that she did not think it was fair that he let her work through her lunch period, but then would not allow her to leave early. She thereafter went to his office to ask him if she could leave, but she denied using loud language. He then discharged her. Plaintiff further testified that she previously had problems with Cassata when she questioned him about a time shortage on her time card. According to plaintiff, he became rude, told her she had no right to question this matter and that in the future she should check out every time she went to the bathroom. When she later found a 3½-hour shortage on her time card, she learned that Cassata had not properly signed her card. In addition, several days before her discharge Cassata asked her to work the following Saturday on three days' notice, although she rarely worked on Saturdays and had already made other plans.

The referee then read into the record a statement by Sarah Russo, an employee of the Gibbons Company, a service representative organization representing Certified. Russo's statement related that Cassata told plaintiff she could leave early if her duties were completed, but when he later told her she could not leave because her scheduled duties were not completed, plaintiff yelled and insisted that she was going to leave early. The statement further related that plaintiff received a prior verbal warning for loud outbursts in the office. The statement does not indicate whether Russo was present during any of these outbursts.

The referee then reversed the claims adjudicator's decision, ruling that plaintiff was disqualified for benefits because she was discharged for misconduct connected with work. The referee made the following findings of fact: on the day of her discharge plaintiff worked without stopping for lunch and requested permission to leave one hour early; when her supervisor refused the request, she returned to work, but then again requested to leave early, arguing that she deserved permission to leave because she had worked through her lunch period; when the supervisor again refused because there was too much work to be done, plaintiff resumed her argument, stating that it was unfair for her to work through her lunch period and then be required to complete the shift; the employer then discharged plaintiff for insubordina-

tion because she had been warned about such arguments previously.

The referee concluded that plaintiff's persistent arguments following her supervisor's lawful direction amounted to sufficient resistance to be construed as refusal to follow orders. The referee further defined insubordination as behavior which is a wilful and wanton violation of the employment relationship and exhibits a disregard of the employer's business interest. The referee then set out the following six points, stating that all six must be clearly established as factual before any form of behavior is determined to be an act of misconduct:

"1. The worker has been discharged or quit in lieu of discharge;

2. The discharge is due to worker's behavior for which the employer is not at fault;

3. There must be a direct 'causal' relationship between the behavior and the discharge;

4. The behavior is connected with or has a demonstrable bearing on the work;

5. The behavior must be a wilful or wanton violation of the employment relationship or disregard of the employer's business interests; and

6. The worker must have knowingly committed the behavior or reasonably should have known the consequences of such act."

Finally, the referee summarily concluded that because the six elements of misconduct had been clearly established in this case, plaintiff was discharged for misconduct connected with her work.

Plaintiff then appealed the referee's decision to the Board. Plaintiff submitted a brief to the Board arguing that the employer failed to prove the six elements of misconduct because: Certified caused or at least contributed to plaintiff's behavior by allowing her to work through her lunch hour and then insisting that she remain until her regular quitting time; Certified failed to prove that plaintiff's behavior was connected with or had a demonstrable bearing on her work because she intended to complete her work and would have worked her normal amount of hours if her request had been granted, and the employer failed to support its assertion that her behavior was disruptive; Certified failed to prove that plaintiff's behavior was a wilful or wanton violation of the employment relationship, or a disregard of the employer's business interest because she used no abusive language nor did she threaten to defy his order, but was merely protesting what she thought was unfair treatment in view of her supervisor's past errors which had resulted in her loss of wages; and Certified

failed to prove that she was knowingly insubordinate or that she should have known the consequences of her acts on the day of discharge because Cassata's testimony was vague as to the source and nature of previous outbursts and the date and content of prior warnings and because Certified's own work rules prescribed written warnings for insubordination. Plaintiff's brief further pointed out that the evidence of the referee's findings of fact did not establish insubordination sufficient to constitute misconduct under the standards set forth by the agency because its Manual of Benefit Precedent Decisions stated:

> "Disputes and bickering between a worker and his supervisor are generally not considered misconduct connected with the work PROVIDED they are conducted without threats of violence and intemperate or loud language or do not constitute a refusal to comply with a reasonable request of the supervisor."

Plaintiff attached to the brief a copy of Certified's Personnel Policy Handbook, along with an affidavit stating that she did not bring the handbook to the previous hearing because she did not anticipate its importance. The handbook provides as follows: for the offense of failing to maintain satisfactory work performance or standards or using threatening or abusive language to any management representative, first or second offenses would result in a written warning, a third offense would result in a disciplinary layoff, and only a fourth offense would result in discharge; insubordination or disobedience to supervision or management including refusal to carry out a work instruction would result in a disciplinary layoff for a first offense and discharge only for a second offense; wilfully hindering operations or interfering with the work of other employees would result in discharge on the first offense. The manual further provided each employee would receive a 45-minute unpaid lunch as scheduled by his supervisor. The handbook also encouraged employees to communicate complaints or questions by informally discussing them with their supervisor.

The Board subsequently affirmed and adopted the referee's decision without taking additional evidence. Plaintiff then filed the instant action in the circuit court of Cook County, seeking judicial review of the Board's decision. Following a hearing, the trial court reversed the Board's decision. The court stated that the law permits employees to argue with employers concerning wages and hours provided it does not become abusive, that the alleged disruption was not clearly set out in evidentiary terms, and that there was no suggestion that plaintiff was abusive. The court found that the evidence did not support

the Board's finding of misconduct based on the Board's own criteria because the evidence failed to show that the discharge was due to the worker's behavior for which the employer was not at fault, nor did it show that the behavior had a demonstrable bearing on the work or that it was a wilful or wanton violation of the employment relationship or in disregard of the employer's business interest.

On appeal, defendants argue that the Board correctly determined plaintiff to be ineligible to receive unemployment compensation benefits due to her misconduct in connection with her work. Under the circumstances of this case, we cannot agree.

■ Section 602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 432(A)) states: "An individual shall be ineligible for benefits for the week in which he has been discharged for *misconduct connected with his work* \*\*\*." (Emphasis added.) The generally accepted definition of misconduct, as quoted in *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 511-12, 475 N.E.2d 879, has been stated as follows:

> " '[T]he intended meaning of the term "misconduct" \*\*\* is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of his employee's duties and obligations to his employer.' "

In an unemployment compensation case, the Board is the ultimate finder of fact (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 465 N.E.2d 1052), and these factual findings are to be held *prima facie* true and correct (Ill. Rev. Stat. 1983, ch. 110, par. 3—110). Our function on review is to determine whether the agency's decision is against the manifest weight of the evidence. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 475 N.E.2d 875.) However, when an administrative order is contrary to the manifest weight of the evidence, it is the duty of the appellate court to affirm the action of the circuit court in setting the order aside. (*Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 470 N.E.2d 1044.) Moreover, a reviewing court is not bound to give the same deference to an agency's conclusions of law, such as its construction of a statute, as it gives to its finding of facts. *Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 466 N.E.2d 1050.

■ After examining the entire record on appeal, we find that the

Board's decision is against the manifest weight of the evidence. In examining the record, a reviewing court will look at all of the evidence in opposition to the challenged finding as well as the evidence which tends to support it. (*Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 466 N.E.2d 1050; *Starkey v. Illinois Civil Service Com.* (1982), 105 Ill. App. 3d 904, 435 N.E.2d 176, *rev'd on other grounds* (1983), 97 Ill. 2d 91, 454 N.E.2d 265.) The acts relied upon here to deny unemployment benefits do not rise to the level of justification for discharge due to misconduct so as to deprive plaintiff of her statutory right for unemployment compensation where she merely argued with her supervisor in his office without using abusive language or threatening to disobey a work order. Being merely argumentative is not sufficient for discharge for misconduct. *Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 470 N.E.2d 1077.

■ Moreover, we find the summary conclusion that all six elements of the Board's criteria concerning misconduct had been clearly established to be against the manifest weight of the evidence. The evidence here fails to support a finding that plaintiff's behavior was a wilful or wanton violation of the employment relationship or in disregard of the employer's business interests where the record clearly shows that plaintiff used no abusive language and made no threats to the supervisor, but was merely arguing with him about her hours in his office.

■ Moreover, even if the Board's findings of fact were correct, it was incorrect in its determination of the legal effect of those acts. (See *Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 470 N.E.2d 1077.) This court has previously ruled that an employee's raising his voice in his supervisor's office in the absence of abusive language or threats is not sufficient for discharge for misconduct so as to justify the denial of unemployment insurance benefits. *Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 470 N.E.2d 1077.

Defendant cites *Losch v. Pennsylvania Unemployment Compensation Board of Review* (1983), 75 Pa. Commw. 94, 461 A.2d 344, in support of its position. However, there the court found that the claimant was discharged for insubordination because she used unprovoked vulgar language to a supervisor. In contrast, plaintiff's supervisor here admitted that she neither used abusive language nor threatened to disregard his orders. Moreover, the record supports a finding that plaintiff's behavior in this case was at least in part provoked by her supervisor's previous conduct with regard to her time card which had caused her loss of wages and the fact that the supervisor's behavior on the date of discharge would have caused her to work for an addi-

tional time period for which she would not be paid. Under the circumstances, we believe it is our duty to affirm the action of the circuit court.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

JOHNSON and LINN, JJ., concur.