STEPHANIE OLESZCZUK, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY et al., Defendants-Appellees.

First District (2nd Division)    No. 1—00—3776

Opinion filed December 17, 2002.

Amy Beckwith, Heather Ross and Lisa Lawler, all of Legal Assistance Foundation of Metropolitan Chicago, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Mary Patricia Kerns, Assistant Attorney General, of counsel), for appellees.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Stephanie Oleszczuk appeals from an order of the circuit court confirming a decision of the Board of Review of the Department of Employment Security (Board of Review or Board) which denied her application for unemployment benefits. Plaintiff claims that her behavior does not amount to misconduct as that word is defined in the Unemployment Insurance Act (the Act) (820 ILCS 405/602(A) (West 1998)). She also claims that the circuit court's decision was contrary to law because it was not based upon the findings of the Board and that the referee failed to properly develop the record at the administrative hearing. We agree with the argument of plaintiff about the meaning of "misconduct" under the Act. We reverse and remand with instructions.

The record shows that on September 8, 1990, plaintiff was hired by Coaster of America as a customer service representative. On December 1, 1999, Coaster sent her to a two-day training session in Los Angeles, California, to learn a new computer system. She was fired for insubordination two days after she returned from training.

Plaintiff then applied for unemployment compensation benefits. These were denied on the ground that she had been fired for misconduct within the meaning of section 602(A) of the Act (820 ILCS 405/602(A) (West 1998)). Plaintiff filed an appeal with her local Illinois Department of Employment Security office. She alleged in her appeal that after she returned from the training session, her office manager, Barbara Melendez, was not receptive to learning about the new computer system from plaintiff and refused to cooperate with her. On

the day she was fired, plaintiff heard Melendez tell clients that plaintiff had gone to California for a free vacation and did not attend the training session. Plaintiff also denied that she had ever shouted at her supervisors. A claims adjudicator affirmed the denial of benefits and the matter was set for a hearing before a referee.

At the hearing, Melendez testified that she had fired plaintiff: (1) for insubordination for telling Melendez that plaintiff had not learned certain tasks regarding shipping and credits at the training session in California because "things were down in California" and "she, you know, couldn't teach me how to do that"; and (2) for yelling at Melendez. In plaintiff's presence, Melendez had called Margie, a member of the training staff in California, and learned that plaintiff had been taught the various tasks that she had denied learning. During the call, plaintiff started "yelling, saying that she did have notes." When asked by the referee to clarify what she meant, Melendez responded:

> "She said she had notes on how to learn it, but she never showed me those notes and she told me that when she was there that the things were down and that she couldn't learn how to do it. And Margie, you know, confirmed that she was taught how to do it."

Melendez admitted that plaintiff had never received warnings about her conduct or behavior at work.

Plaintiff testified that after she returned from California, she conducted a training session to teach other employees the new system. In the middle of the session, although plaintiff was teaching a different task at that time, Melendez asked her to teach her how to do "shipping." Plaintiff responded that she wanted to keep to her curriculum and would teach Melendez the task at the same time that she taught the other employees. When the referee asked plaintiff whether she had told Melendez that she did not learn "shipping" because the systems were down in California, plaintiff responded:

> "There were certain things, systems that they were working on in California, yes. And yes I did tell her that, you know, we did learn what they could show us in California. I didn't say it was completely down, no."

The hearing referee then asked plaintiff what happened when Melendez made a conference call to Margie. Plaintiff responded:

> "[W]hat happened was basically she told Margie that I didn't learn anything out in California; Margie said yes I did. And it went from there where basically it was, it sounded like I didn't learn at all anything from L.A., which I did—I had my notes and everything with me."

Plaintiff stated that, although she became upset during the conversation, she never yelled at Melendez. She was fired immediately after the telephone call.

The hearing referee issued a written decision, adopted by the Board, stating in her findings of fact:

"The employer sent the claimant for training in California. Upon the claimant's return, the employer asked the claimant to show her what she had learned. The claimant informed the employer that she had not learned specific tasks. The employer called the training site and was told that the claimant had been taught the tasks. The claimant then yelled at the employer and was discharged for insubordination."

The referee concluded:

"Based on a preponderance of the evidence, the employer discharged the claimant for misconduct. The employer testified that the claimant denied learning specific tasks and then yelled at her after the employer confirmed the training agenda. The claimant did not provide testimony and evidence which would warrant a reversal of the local office determination. The claimant's actions constituted a deliberate and willful disregard of the employer's interests. The employer discharged the claimant for misconduct connected with the work. The claimant is, therefore disqualified for benefits under Section 602A of the Act."

Plaintiff appealed the referee's decision to the Board of Review, asserting that she had learned the tasks at the California training session to the best of her ability. She contended that she had never refused to teach Melendez the new system, but that Melendez had refused to learn the new system from her and told her that she would learn from another employee.

The Board affirmed the referee's decision, stating that "the Referee's decision is supported by the record and the law. We *** incorporate it as part of our decision and affirm the denial of benefits as stated therein."

Plaintiff filed an appeal in the circuit court, asserting that the record and the law did not support the finding that she deliberately and willfully violated a reasonable employer rule. She further contended that neither yelling, insubordination nor failing to learn certain tasks was a sufficient ground for misconduct under section 602(A) of the Act (820 ILCS 405/602(A) (West 1998)). Plaintiff also asserted that, because the referee failed to elicit evidence that would have shown whether plaintiff willfully or deliberately violated a reasonable employer rule, the referee failed to discharge her responsibility to develop the record and protect plaintiff's right to a full and fair hearing. Plaintiff claimed that, because the record was inadequate, the circuit court was required to remand the case to a different referee for a new hearing.

The circuit court affirmed the Board.

■ On appeal to this court, plaintiff asserts that the circuit court erred when it confirmed the Board's decision on a ground independent of the Board's stated reasons for denying her unemployment compensation benefits. We agree. The trial court appears to have concluded from the record that plaintiff lied to her supervisor and that such behavior can be read as misconduct under the Act. But the finding of the trial court, and the referee for that matter, is not relevant. Our review is limited to the propriety of the final agency decision. See *Robbins v. Board of Trustees of Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538, 687 N.E.2d 39 (1997) (a court's function on administrative review is to determine whether the findings and decision of the agency are supported by the evidence). We note, however, that the Board incorporated the decision of the referee "as part" of its decision. Since there are no findings of fact or conclusions of law in the Board's decision other than those of the referee, those findings of fact and conclusions of law are the only reviewable matters before us. There is no finding by the referee that the plaintiff lied to a supervisor.

■ Both parties set out the standards of review applicable to findings of fact and questions of law and suggest that we conduct a separate review of the facts against the manifest weight of the evidence standard, while reviewing legal conclusions based on those facts *de novo*. We believe that both parties overlook that the issue here is a mixed question of fact and law to which a clearly erroneous standard applies. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 692 N.E.2d 295 (1998).

Mixed questions of law and fact—questions that require an examination of the legal effect of a given set of facts—are reviewed for clear error, a standard in between the manifest weight and *de novo* standards. *Belvidere*, 181 Ill. 2d at 205. Applying a clearly erroneous standard to mixed questions of law and fact provides the necessary deference to the agency's experience and expertise. *Belvidere*, 181 Ill. 2d at 205. Deference to agency expertise is appropriate here where the Department is charged with determining whether an employee's behavior that led to her termination amounted to "misconduct." This is a fact-based inquiry, in which "misconduct" has a distinct meaning in the unemployment context. See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391-92, 763 N.E.2d 272 (2001) (clearly erroneous standard applied to Department's decision that employees were not independent contractors as that term is defined in section 212 of the Act). An agency decision is clearly erroneous only where a review of the record leaves the court with a " 'definite and firm conviction that a mistake has been committed.' "

*AFM*, 198 Ill. 2d at 395, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 2d 746, 766, 68 S. Ct. 525, 542 (1948). ■ Section 602(A) of the Act defines misconduct as:

"the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of her work, provided that such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 1998).

■ This definition of misconduct reflects a legislative intent that persons should receive unemployment benefits even though they were discharged for incapacity, carelessness, inadvertence, negligence or inability to perform assigned tasks. *Washington v. Board of Review*, 211 Ill. App. 3d 663, 667, 570 N.E.2d 566 (1991). It has been held that the Act denies an employee benefits only if (1) the employer had a reasonable work rule (2) which the employee deliberately and willfully violated, and (3) the violation either harmed the employer or other employees, or was repeated by the employee despite a warning or instruction to cease the conduct. *DeBois v. Department of Employment Security*, 274 Ill. App. 3d 660, 664, 653 N.E.2d 1336 (1995), citing *Kiefer v. Department of Employment Security*, 266 Ill. App. 3d 1057, 1061, 640 N.E.2d 1252 (1994), and *Zuaznabar v. Board of Review of the Department of Employment Security*, 257 Ill. App. 3d 354, 356, 628 N.E.2d 986 (1993).

■ When the facts of this case are reviewed under the generally accepted standard set out in the Act and *DeBois,* we do not understand how the conclusion reached by the referee and adopted by the Board could be reached. The referee gives no hint of what reasonable work rule was implicated. No evidence of a reasonable work rule is referenced in the record. We could safely infer that if an employee is directed to attend a training session, it would be a reasonable work rule to require that employee attend and show evidence of having learned something. It could be argued that such a rule is so obvious it need not be stated. But there is uncontroverted evidence here that plaintiff did attend and that she was communicating something of what she had learned to other employees when the confrontation with her supervisor occurred. What followed was a heated dispute about how much, or how well, she had learned certain subjects that were taught. The referee did not explain what reasonable work rule was violated by this conduct. In the absence of evidence of a reasonable work rule, or an explanation of what rule might be inferred, it is difficult to understand how the referee then reached the next conclusion: that a rule was deliberately and willfully violated. Finally, other than

the irritation evidenced by the supervisor, the record is silent on how the employer was harmed by the plaintiff's conduct or whether it was repeated conduct after a warning. There is evidence, however, that plaintiff had been employed by Coaster for nine years without receiving a warning about her behavior at work.

A single flurry of temper between a worker and a supervisor may be enough to warrant discharge in an at-will relationship. But it is not enough to deny unemployment benefits. We have held that arguing with a supervisor without using abusive language or threats is not sufficient to establish discharge for misconduct under the Act. *Gee v. Board of Review of the Department of Labor*, 136 Ill. App. 3d 889, 896, 483 N.E.2d 1025 (1985), citing *Sheff v. Board of Review, Illinois Department of Labor*, 128 Ill. App. 3d 347, 470 N.E.2d 1044 (1984). Because the record fails to reveal evidence that would meet the *De-Bois* test or the clear wording of the Act, we must conclude that the order of the Board is clearly erroneous. *AFM*, 198 Ill. 2d at 395. Having done so, we need not reach the other reasons plaintiff urges for reversal.

We reverse the order of the circuit court affirming the order of the Board. We remand with directions to vacate the order of the Board and conduct a hearing on the amount of unemployment benefits to which plaintiff is entitled.

Reversed and remanded with directions.

McBRIDE, P.J., and BURKE, J., concur.