Rule 23 order filed
November 25, 2014;
Motion to publish granted
January 12, 2015.

2015 IL App (5th) 130306

NO. 5-13-0306

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CLARA E. WISE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY; THE BOARD OF REVIEW OF THE | ) | |
| DEPARTMENT OF EMPLOYMENT SECURITY; | ) | No. 12-MR-256 |
| JAY ROWELL, Director of Employment Security; | ) | |
| WILLIAM H. McCLUSKY, MARILYN S. ORSO, | ) | |
| WILLIAM J. NOLAN, DAVID A. BONOMA, and | ) | |
| TUMIA ROMERO, Members of the Board of Review; | ) | |
| and CASINO QUEEN, INC., | ) | Honorable |
| | ) | Barbara L. Crowder, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Clara E. Wise, was discharged from her employment with Casino Queen for insubordination. The Department of Employment Security denied the plaintiff's claim for unemployment insurance benefits. On a petition for administrative review, the circuit court reversed the final administrative decision, finding that there was no harm to the employer. The defendants, Casino Queen, Inc., the Department of

1

Employment Security and its director, the Board of Review of the Department of Employment Security (Board of Review or Board), and members of the Board of Review, appeal. They argue that the circuit court incorrectly concluded that the decision of the Board of Review was clearly erroneous. We reverse the decision of the circuit court and reinstate the decision of the Board of Review.

¶ 2    On November 19, 2011, the plaintiff was employed by Casino Queen as a cook and buffet station attendant. That day, she was working at the barbecue station. Betty Stanek, the plaintiff's supervisor, checked the temperatures of the items on the barbecue station buffet line and discovered that the temperatures of two of those items−the coleslaw and tuna salad−were too high. Stanek instructed the plaintiff to get more ice and water to put under the pans containing the coleslaw and tuna salad in order to keep them cooled to a safe temperature. The plaintiff told Stanek that she would not get the ice and water because she was tired of doing other people's jobs. According to Stanek, another employee volunteered to get the ice. According to the plaintiff, she asked another employee to get the ice while she went to the cooler to replenish the coleslaw.

¶ 3    Stanek placed the plaintiff on suspension. Two days later, the plaintiff met with Kim Cushon, Casino Queen's employee relations manager. The plaintiff admitted to Cushon that the incident occurred. In a written statement, she likewise acknowledged telling Stanek that she would not comply with the request because getting the water and ice was "pantry work." Cushon made the decision to discharge the plaintiff for insubordination.

¶ 4    The plaintiff filed a claim for unemployment benefits, which was denied. She

2

requested an administrative appeal of that decision. A hearing referee held a telephone hearing at which Stanek, Cushon, and the plaintiff testified.

¶ 5    Stanek testified that at the beginning of her shift, she checked the temperature of the food on the plaintiff's line. The coleslaw was 54 degrees and the tuna salad was 49 degrees. Both were too warm. Stanek stated that she lifted up the food pans and saw that there was not enough ice or water under the pans to keep the dishes cooled to the proper temperature. Stanek directed the plaintiff to add water and ice. Stanek testified that the plaintiff refused to do so, saying that she was "tired of doing everybody's job around here."

¶ 6    Stanek further testified that instead of getting the water and ice, the plaintiff left and told another employee (Kim Tucker, who worked in the pantry) to get the ice. Tucker then came back to the barbecue station and told Stanek that getting the ice was not her job. According to Stanek, the attendant at a neighboring station (Kim Baker) then volunteered to get the water and ice. Stanek acknowledged that the plaintiff had no previous incidents of insubordination.

¶ 7    The plaintiff admitted in her testimony that when Stanek asked her to put ice under the two dishes, she told Stanek, "I'm not doing that, *** that's not my job, that's pantry work." She testified that this was just a "figure of speech." She explained that on many previous occasions, she had said she was not going to do other people's jobs, but she always did whatever was asked of her even if she felt it was someone else's job. However, she further acknowledged that instead of getting the water and ice as requested, she left her station. She explained that she then went to the pantry, where Tucker

3

worked, to refill the coleslaw, and asked Tucker to get more ice.

¶ 8    The plaintiff testified that when she returned from getting more coleslaw, she saw that Kim Baker, the neighboring station attendant, was putting ice under the items in her line. According to the plaintiff, Tucker arrived at this point carrying additional ice. The plaintiff apologized, told Tucker she did not know Baker was going to get ice, and asked her to leave the additional ice at the plaintiff's station so it would be available if needed later.

¶ 9    Kim Cushon, the employee relations manager who decided to discharge the plaintiff, testified that she did not witness the incident herself, but read a write-up of the events prepared by Stanek. Cushon further testified that when she discussed the incident with the plaintiff, the plaintiff did not deny that it happened.

¶ 10   The referee issued a decision upholding the denial of benefits. He expressly found that (1) the plaintiff told her supervisor that she was not going to get the ice and then left her work area and told another employee to get the ice; (2) there was no compelling reason for the plaintiff to refuse to follow her supervisor's instruction; (3) the plaintiff was aware that Casino Queen had a rule against insubordination; (4) the rule was reasonable; and (5) the plaintiff's refusal to get the ice was an act that harmed her employer.

¶ 11   The Board of Review considered the record without taking additional evidence. The Board likewise found that the plaintiff told her supervisor she would not comply with the request to get more ice, left her station, and told another employee to perform the task. The Board further found that the plaintiff's failure to comply with her supervisor's

4

request "constituted a deliberate and willful violation of the employer's policy concerning employee behavior which caused the employer harm."

¶ 12    The plaintiff filed a petition for review under the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2012)).  The circuit court reversed the final decision of the Board of Review, finding that there was no evidence that the plaintiff's refusal to comply with her supervisor's direction harmed her employer.  The court focused on cases which hold that merely being argumentative is generally insufficient to amount to misconduct within the meaning of the applicable statute.  See, *e.g.*, *Oleszczuk v. Department of Employment Security*, 336 Ill. App. 3d 46, 52 (2002); *Gee v. Board of Review of the Department of Labor*, 136 Ill. App. 3d 889, 896 (1985).  This appeal followed.

¶ 13    Before considering the defendants' contentions, we briefly address the plaintiff's contention that we should dismiss this appeal for lack of jurisdiction.  Her argument is based on the timing of the defendants' notices of appeal.  The circuit court entered judgment on May 13, 2013.  The Department of Employment Security, Board of Review, and individual defendants (administrative defendants) timely mailed their notice of appeal on June 12, 2013.  Casino Queen filed a notice of joinder in the administrative defendants' appeal on June 19.  In the recent case of *Shaw v. Department of Employment Security*, 2013 IL App (1st) 122676, a panel of the First District Appellate Court held that the Department of Employment Security does not have standing to file an appeal without the employer's participation in the appeal because the employer is the real party in interest.  Following this rationale, the plaintiff contends that the timely appeal filed by the administrative defendants in this case was a "legal nullity."  Thus, she argues, Casino

5

Queen's notice to join the appeal was the only notice of appeal. She further argues that because this notice was filed more than 30 days after entry of the circuit court's judgment, it was untimely and could not confer jurisdiction. However, shortly after the plaintiff filed her brief with this court, the First District vacated its opinion in *Shaw* pursuant to a motion for rehearing. *Shaw v. Department of Employment Security*, 2013 IL App (1st) 122676, *vacated upon grant of motion for reh'g*; see *Shaw v. Illinois Department of Employment Security*, 2014 IL App (1st) 122676-U. This leaves no authority to support the plaintiff's contention that we lack jurisdiction over this appeal. We will therefore turn now to the merits of the defendants' appeal.

¶ 14 On appeal from a decision involving unemployment insurance benefits, this court reviews the final decision of the Board of Review, not the decision of the referee or the decision of the circuit court. *Walls v. Department of Employment Security*, 2013 IL App (5th) 130069, ¶ 14. We consider the purely factual findings of the Board of Review to be *prima facie* true and correct, and our review of such findings is limited to determining whether they are against the manifest weight of the evidence. However, we apply a *de novo* standard of review to the Board's conclusions of law. *Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 173 (2008).

¶ 15 The Board's ultimate determination that a claimant is not eligible for benefits presents a mixed question of fact and law. We will reverse this determination only if it is clearly erroneous. *Farris v. Department of Employment Security*, 2014 IL App (4th) 130391, ¶ 35. That standard is met when a thorough review of the record gives the reviewing court " 'the definite and firm conviction that a mistake has been committed.' "

6

*AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 16    At issue in this appeal is whether the plaintiff's conduct constituted "misconduct" as that term is defined in the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2012)).  An employee who is discharged from her position due to misconduct is not eligible to receive unemployment insurance benefits.  820 ILCS 405/602(A) (West 2012).    The Act defines misconduct as "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning."    820 ILCS 405/602(A) (West 2012).

¶ 17    Courts interpreting this provision have held that a violation of a workplace rule is deliberate and willful if the employee knows that her conduct violates the rule.  *Czajka*, 387 Ill. App. 3d at 176.  Here, the plaintiff was discharged for violating her employer's rule against insubordination.  The plaintiff admitted that she knew Casino Queen had a rule against insubordination, and there is no real dispute that the rule is reasonable.  In addition, there is no dispute that the plaintiff was not warned previously about insubordination.  The only question is whether her conduct harmed her employer.

¶ 18    Courts of this state have held that this inquiry encompasses potential harm to the employer as well as actual harm.  *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 329 (2009); *Greenlaw v. Department of Employment Security*, 299 Ill. App.

3d 446, 448 (1998). The plaintiff argues, however, that by the plain terms of the statute, potential harm is not sufficient to disqualify her from receiving unemployment insurance benefits. The weight of authority in Illinois holds otherwise. *Hurst*, 393 Ill. App. 3d at 329. As the Fourth District recently observed in rejecting a similar argument, the interpretation urged by the plaintiff would "lead to absurd results." *Farris*, 2014 IL App (4th) 130391, ¶ 40. The court observed that if actual harm were required for a finding of misconduct, "an employee who steals cash from an office safe would not be guilty of misconduct so long as the police eventually return the cash to the employer." *Farris*, 2014 IL App (4th) 130391, ¶ 40. We note, however, that where the potential for harm is remote or speculative, this potential will not satisfy the requirement of harm to the employer. See *Czajka*, 387 Ill. App. 3d at 180. We will therefore consider whether there was a realistic potential for the employer to be harmed by the plaintiff's conduct. In making this inquiry, we must keep in mind that while the claimant bears the burden of proving she is eligible for unemployment insurance benefits, the Act must be liberally construed in favor of giving benefits. *Czajka*, 387 Ill. App. 3d at 174.

¶ 19 The defendants argue that the Board of Review's decision is not clearly erroneous. They further argue that the cases cited by the plaintiff and relied upon by the circuit court are distinguishable from the case before us. We agree.

¶ 20 It is true, as the plaintiff correctly points out, that a single incident of argument with a supervisor without more generally does not rise to the level of "misconduct" so as to deprive a discharged employee of her right to unemployment benefits. As the First District Appellate Court observed in *Oleszczuk*: "A single flurry of temper between a

8

worker and a supervisor may be enough to warrant discharge in an at-will relationship. But it is not enough to deny unemployment benefits." *Oleszczuk*, 336 Ill. App. 3d at 52. This case, however, involves more than merely argumentative behavior or a "single flurry of temper"; it involves a direct refusal to comply with a supervisor's instruction. Moreover, the instruction was to perform a task related to the safety of Casino Queen's customers. These facts put the instant case in stark contrast to those cases cited by the plaintiff for the proposition that merely being argumentative does not constitute misconduct within the meaning of the statute.

¶ 21    In *Oleszczuk*, for example, the employer sent an employee to a two-day training session to learn how to use a new computer system. *Oleszczuk*, 336 Ill. App. 3d at 47. After returning, she passed on what she learned at the training session to her supervisor and other employees. This led to a "heated dispute" between the employee and her supervisor over "how much, or how well, she had learned certain subjects." *Oleszczuk*, 336 Ill. App. 3d at 51. The employee was then discharged for insubordination. *Oleszczuk*, 336 Ill. App. 3d at 47.

¶ 22    In concluding that the employee's argumentative behavior did not constitute misconduct, the First District emphasized the fact that there was no evidence that she had disobeyed any reasonable work rule or failed to follow the directions of her supervisor. The court noted that the undisputed evidence showed that the plaintiff in that case attended the training session as required. *Oleszczuk*, 336 Ill. App. 3d at 51. The court then stated, "other than the irritation evidenced by the supervisor, the record is silent on how the employer was harmed by the plaintiff's conduct." *Oleszczuk*, 336 Ill. App. 3d at

51-52. The court went on to note that "arguing with a supervisor without using abusive language or threats is not sufficient to establish discharge for misconduct" within the meaning of the Unemployment Insurance Act. *Oleszczuk*, 336 Ill. App. 3d at 52.

¶ 23   *Gee* likewise involved an argument between an employee and her supervisor with no evidence that the employee disobeyed the supervisor's instructions. See *Gee*, 136 Ill. App. 3d at 896. There, the employee testified that she told her supervisor she would work through her lunch hour if she could leave an hour early. The supervisor agreed, but then refused to allow her to leave early. She told him that this was not fair. She went back to work, but then asked again if she could leave. When she did so, she was fired. *Gee*, 136 Ill. App. 3d at 892. The supervisor testified that the plaintiff became "irate" over not being allowed to leave early and that her behavior was disruptive to visitors and other employees. *Gee*, 136 Ill. App. 3d at 891. However, he acknowledged that she did not use abusive language and "did not say she would leave whether or not she had permission." *Gee*, 136 Ill. App. 3d at 891. The First District explained that this conduct did not "rise to the level of *** misconduct so as to deprive plaintiff of her statutory right for unemployment compensation where she merely argued with her supervisor in his office without using abusive language *or threatening to disobey a work order*." (Emphasis added.) *Gee*, 136 Ill. App. 3d at 896.

¶ 24   *Sheff v. Board of Review, Illinois Department of Labor*, 128 Ill. App. 3d 347 (1984), another case cited by the plaintiff, likewise involved a heated dispute between an employer and his supervisor. There, the plaintiff worked at a grocery store. Prior to the date on which he was discharged, the plaintiff had complained about a reduction in his

10

hours.  *Sheff*, 128 Ill. App. 3d at 349.  On the day he was discharged, the plaintiff had an argument with a fellow employee.  *Sheff*, 128 Ill. App. 3d at 349.  A conference was held in the store manager's office at the plaintiff's request.  *Sheff*, 128 Ill. App. 3d at 349-50.  At the conference, the employee stated that he was unhappy with his current duties.  According to the store manager, the plaintiff did not use foul or abusive language, but did raise his voice "to twice his normal speaking voice."  *Sheff*, 128 Ill. App. 3d at 350.

¶ 25    On appeal, this court agreed with the circuit court that the factual findings underpinning the administrative decision to deny unemployment benefits were against the manifest weight of the evidence.  *Sheff*, 128 Ill. App. 3d at 350-51.  We found that the evidence showed that the plaintiff was fired because he protested the reduction in his hours.  *Sheff*, 128 Ill. App. 3d at 351.  We went on to explain in *dicta* that, even assuming the board of review's factual findings were correct, the actions relied upon by the employer and board of review did not amount to misconduct as contemplated by the Unemployment Insurance Act.  *Sheff*, 128 Ill. App. 3d at 351-52.  We explained that arguing with a supervisor did not rise to the level of "misconduct" sufficient to deprive the plaintiff of unemployment benefits because he "raised his voice in the privacy of the manager's office" without using "abusive language or vilification of the manager" and did not threaten the manager.  *Sheff*, 128 Ill. App. 3d at 351-52.

¶ 26    None of these cases stand for the proposition that arguing with a supervisor can only rise to the level of misconduct if the employer uses foul or abusive language.  See, *e.g.*, *Stovall v. Department of Employment Security*, 262 Ill. App. 3d 1098, 1102-03 (1994) (rejecting an argument identical to the one raised by the plaintiff here and finding

11

misconduct where the employee argued with her supervisor, accused the supervisor of lying, and told the supervisor she did not have to comply with her instructions); see also *Greenlaw v. Department of Employment Security*, 299 Ill. App. 3d 446, 449 (1998) (finding that an argument with a supervisor constituted misconduct where the employee used abusive language and "that insubordinate conduct was compounded" by the employee's refusal to comply with the instructions of two supervisors). As previously discussed, the plaintiff here did not just argue with Stanek; she directly refused to comply with an instruction. Although this fact is significant, it is not dispositive. The ultimate question is whether the plaintiff's actions harmed or potentially harmed her employer.

¶ 27    We note that the Board of Review concluded that the plaintiff's actions harmed her employer without providing any analysis. Nevertheless, our task is to determine whether, considering the record as a whole, this conclusion was clearly erroneous. Applying this standard of review, we cannot say that a review of the record leaves this court with the firm impression that a mistake has been made. Indeed, we find ample support in the record for the Board's conclusion.

¶ 28    Although there were some discrepancies in the testimony of the plaintiff and that of her supervisor, Betty Stanek, the salient facts are not in dispute. Both Stanek and the plaintiff testified that the plaintiff told Stanek she refused to get the water and ice because it was not her job. Both further testified that, rather than getting the water and ice herself, the plaintiff asked another employee to do so. In Stanek's write-up of the incident, she indicated that to prevent the development of bacteria, the food items were required to be kept at a temperature of 41 degrees or cooler. As previously stated, however, the

12

coleslaw and tuna salad were significantly warmer than this, at temperatures of 49 degrees and 54 degrees respectively.

¶ 29 The realistic potential for serious harm to result from the plaintiff's refusal to comply with an instruction to remedy this situation is readily apparent. If the food had remained at temperatures significantly above the safe range, customers could have eaten it and become ill as a result. This possibility was not remote or speculative. Although the plaintiff asked another employee to get the ice and water for her, she did not take any steps to make sure that the task was actually performed. The plaintiff testified that she got additional coleslaw from a cooler in the pantry and only discovered that both Tucker and Baker were bringing ice when she returned. According to Stanek, Tucker did not get the ice because it was not her job to do so. Moreover, Stanek testified that maintaining the barbecue station−including keeping sufficient ice and water under the food items−*was* part of the plaintiff's job. Even accepting the plaintiff's version of events, it was merely fortuitous that another employee was willing to perform the task. See *Farris*, 2014 IL App (4th) 130391, ¶ 39 (finding the potential harm to the employer sufficient to support a finding of misconduct where it was "merely fortuitous" that no actual harm resulted from an employee's violation of his employer's biosecurity procedures because he was prevented from reentering a "clean area" without showering first).

¶ 30 In addition, the plaintiff's insubordination took place in front of other employees. As such, her refusal to follow a safety-related instruction could have demonstrated to other employees that such rules and instructions can be disregarded. See *Brodde v. Didrickson*, 269 Ill. App. 3d 309, 311 (1995).

13

¶ 31 In sum, our review of the record as a whole does not leave this court with the firm impression that the Board of Review made a mistake. As such, we agree with the defendants that the circuit court erred in reversing the Board's determination. We thus reverse the court's order and reinstate the administrative decision.

¶ 32 Circuit court reversed; administrative decision reinstated.

2015 IL App (5th) 130306

NO. 5-13-0306

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CLARA E. WISE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY; THE | ) | |
| BOARD OF REVIEW OF THE DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY; JAY ROWELL, Director of | ) | No. 12-MR-256 |
| Employment Security; WILLIAM H. McCLUSKY, MARILYN | ) | |
| ORSO, WILLIAM J. NOLAN, DAVID A. BONOMA, and | ) | |
| TUMIA ROMERO, Members of the Board of Review; and | ) | |
| CASINO QUEEN, INC., | ) | Honorable |
| | ) | Barbara L. Crowder, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**       November 25, 2014
**Motion to Publish Granted:**  January 12, 2015
**Opinion Filed:**            January 12, 2015

_____

**Justices:**        Honorable  Melissa A. Chapman, J.

              Honorable Thomas M. Welch, J., and
              Honorable S. Gene Schwarm, J.,
              Concur

_____

**Attorneys      Linda Boachie-Ansah, Assistant Attorney General, 100 W. Randolph Street, 12th
for         Floor, Chicago, IL 60601 (attorney for The Dept. of Employment Security, etc.)
Appellants**

              Sean K. Cronin, Donovan, Rose, Nester, P.C., 201 S. Illinois Street,  Belleville,
              IL 62220 (attorney for Casino Queen, Inc.)

_____

**Attorney      Edward J. Szewczyk, Callis, Papa, Hale & Szewczyk, P.C., 1326 Niedringhaus
for         Ave., P.O. Box 1326, Granite City, IL 62040
Appellee**

_____